## Young v. Presbyterian Homes Inc.

C.P. of Lehigh County, no. 2000-C-990.

*John S. Harrison,* for plaintiff.
*Vincent Candiello,* for defendant Presbyterian Homes.
*Kelly M. Smith,* for defendant Quinby.

BLACK, *J.,* January 16, 2001—On January 3, 2001, I issued an order denying plaintiff's motion to compel discovery of statements made by management employees of defendant Presbyterian Homes Inc. to legal counsel for both defendants. Plaintiff had moved for an order (a) compelling these employees to testify in depositions about such statements; (b) directing defendants to produce all written documentation of meetings between these employees and defendants' legal counsel; and (c) requiring defendants' legal counsel to be deposed about such meetings. This opinion sets forth my reasons for denying plaintiff's motion to compel.

## FACTUAL BACKGROUND

Plaintiff was previously employed by Presbyterian, a non-profit corporation which operates several long-term care facilities. Defendant Lisa Quinby is executive director of one of Presbyterian's facilities and was plaintiff's immediate supervisor at this facility. In this action, plaintiff claims that Ms. Quinby committed the torts of assault, battery and intentional infliction of emotional distress upon her. Plaintiff also alleges that Presbyterian was negligent in hiring and retaining Ms. Quinby.

Presbyterian is represented in this action by Vincent Candiello Esq., of the law firm of Morgan, Lewis & Bockius LLP. Ms. Quinby is represented by separate counsel, Kelly M. Smith Esq., of the law firm of Heimbach, Spitko & Heckman. Defense counsel recognized that their clients have a common interest in defending against plaintiff's allegations. Therefore, on behalf of their respective clients, they entered into a joint defense and confidentiality agreement dated September 12, 2000.

In this agreement, defendants agreed to exchange and share certain information regarding the case, including material protected from disclosure by the attorney-client privilege, as well as witness and client interviews and statements. Defendants further agreed not to disclose any protected joint defense materials received pursuant to the agreement to any other person, except to each other or their respective attorneys or their respective attorneys' employees, agents and/or outside contractors, including experts and consultants, without the prior consent of the

party that provided the materials or information and the prior consent of that party's counsel.

Following execution of the joint defense agreement, Mr. Candiello and Ms. Smith met jointly with various management employees of Presbyterian, including Paulette Hoffman, Carol Reppert, Kathleen Kohler, Patricia Henderschedt and Lisa Amey, in order to review plaintiff's allegations. Mr. Candiello and Ms. Smith also met with these same individuals a second time shortly before their depositions.

On November 8 and 9, 2000, plaintiff's counsel deposed these individuals and attempted to elicit testimony from them regarding their discussions with Mr. Candiello and Ms. Smith. Mr. Candiello objected to these questions on behalf of Presbyterian, based on the attorney-client privilege. He provided plaintiff's counsel at this time with a copy of the joint defense agreement.

Plaintiff's counsel contends that the attorney-client privilege does not apply because Ms. Smith, who represents Ms. Quinby, was present at the meetings between Presbyterian's management employees and Mr. Candiello. Hence the motion to compel.

## DISCUSSION

The attorney-client privilege has a long and time-honored history. It is the oldest privilege for confidential communications, dating back to the reign of Elizabeth I in 15th century England. See 8 Wigmore, Evidence §2290 (McNaughton rev. 1961); see also, *Cohen v. Jenkintown Cab Co.,* 238 Pa. Super. 456, 357 A.2d 689 (1976) (discussing the history of the privilege and the

rationale for its existence). The Commonwealth Court recently emphasized the importance of the privilege in *Gould v. City of Aliquippa,* 750 A.2d 934, 936 (Pa. Commw. 2000):

"The attorney-client privilege performs a vital function in the legal system by fostering a confidence between clients and their advocates that will lead to a trusting and open attorney-client dialogue."

The privilege as it applies to civil cases is currently codified at section 5928 of the Judicial Code, 42 Pa. C.S. §5928, as follows:

"In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client."

Where the client is a corporation or like entity, the privilege extends to communications between its attorney and agents or employees authorized to act on its behalf. See *Gould v. City of Aliquippa, supra;* see also, *Upjohn Company v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981); *In re Ford Motor Company,* 110 F.3d 954 (3d Cir. 1997). Thus, communications between management employees of Presbyterian, a non-profit corporation, and Mr. Candiello, its corporate counsel, fall within the scope of the attorney-client privilege.

The presence of a third party during an attorney-client communication will generally negate the privilege. The reason is that the client presumably does not intend his communications to be confidential if they are made in the presence of a third party. See *Johnston v. Johnston,*

346 Pa. Super. 427, 433, 499 A.2d 1074, 1077 (1985). Defendants contend that this general rule does not apply where the third party is counsel for a co-defendant participating jointly with the client's counsel in the defense of the case pursuant to a joint defense agreement.

Defendants' position is sometimes referred to as the joint defense privilege. However, this is somewhat of a misnomer. It is not a new privilege, but merely an application of the attorney-client privilege to a specific factual setting. Moreover, it has been applied not only to co-defendants, but also to other parties who share a common interest in the matter.

The Pennsylvania Rules of Evidence do not deal with privileged communications; hence they do not address the joint defense or common interest doctrine. See Pa.R.E. 501. Nor does there appear to be any reported Pennsylvania case directly in point. However, in the context of a multi-defendant criminal prosecution, the Superior Court has stated that a joint defense is appropriate and that the defendants have a right to assume that statements made by them within the group for their joint benefit will remain confidential. See *Commonwealth v. Scarfo,* 416 Pa. Super. 329, 611 A.2d 242 (1992), *alloc. denied,* 535 Pa. 633, 631 A.2d 1006 (1993). In *Scarfo,* one of nine co-defendants "flipped" to the Commonwealth's side and testified against the other eight defendants at trial. The Superior Court ordered a new trial on the ground that the Commonwealth had failed to assure that a wall of separation existed between the prosecution and the "flipped" defendant. This wall of separation was necessary, the court held, because of the "strong potential for information exchange" regarding the defense

strategy and evidence. *Id.*, 416 Pa. Super. at 378, 611 A.2d at 266. In language foreshadowing the defendants' position in the instant case, the court wrote:

"[In complex multi-defendant cases] it would be reasonable for a defendant to assume that the other defendants are allied with him or her and that the confidentiality of statements made for the benefit of group preparation would stay confidential within the group until the appropriate time for disclosure, perhaps at trial. 'Defendants have both the right to prepare a group defense and the right to communicate privately with counsel . . . .' " *Id.* at 377-78, 611 A.2d at 266. (citation omitted)

Significantly, an overwhelming majority of those states that have considered the issue have recognized the joint defense or common interest doctrine by statute, rule of court or judicial decision. See annexed Table of Authorities Recognizing Joint Defense or Common Interest Doctrine. Moreover, on the federal level, 11 of the circuit courts of appeal have recognized the doctrine. *Id.*

The rule on attorney-client privilege proposed by the National Conference of Commissioners on Uniform State Laws also includes the joint defense or common interest doctrine. The text of the proposed rule is as follows:

*"General Rule of privilege.* A client has a privilege to refuse to disclose and to prevent any other person from disclosing a *confidential communication made for the purpose of facilitating the rendition of professional legal services to the client* (i) between the client or a representative of the client and the client's lawyer or a representative of the lawyer, (ii) between the lawyer and a representative of the lawyer, *(iii) by the client or a rep-*

*resentative of the client or the client's lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein,* (iv) between representatives of the client or between the client and a representative of the client, or (v) among lawyers and their representatives representing the same client." Uniform Rules of Evidence (U.L.A.) Rule 502(b). (emphasis added)

I believe there are sound reasons, both theoretical and practical, for recognition of the joint defense or common interest doctrine. As noted above, the theory that the attorney-client privilege is lost where statements are made to counsel in the presence of a third party derives from the presumption that a client has no intention of maintaining confidentiality if a third party is present. However, where the third party is counsel for a co-defendant and is assisting in a joint defense, such a presumption is unrealistic. It does not make sense to infer an intent to waive confidentiality in these circumstances. On similar reasoning, it has been held that communications made by a client to investigators, paralegals, secretaries, or other employees of the client's attorney for the purpose of facilitating legal advice are considered confidential communications and are protected by the attorney-client privilege. See *Commonwealth v. Noll,* 443 Pa. Super. 602, 608, 662 A.2d 1123, 1126 (1995) (accident reconstruction expert); *Commonwealth v. Mrozek,* 441 Pa. Super. 425, 428-31, 657 A.2d 997, 999-1000 (1995) (secretary); *Commonwealth v. Hutchinson,* 290 Pa. Super. 254, 262-63, 434 A.2d 740, 744-45 (1981) (investigator); *In re Grand Jury Proceedings,* 762 F.2d 3, 6 n.4 (1st Cir. 1986) (paralegal).

Communications to counsel for a co-defendant with whom there is a joint defense agreement should also be protected. As stated in *McCaffrey v. Estate of Brennan*, 533 S.W.2d 264, 268 (Mo. Ct. App. 1976):

"[I]t is the function of the third party—his relationship to the client—which determines whether the privilege encompasses communications made by, or in the presence of that third party."

Where the third party is assisting in the defense of the litigation, either as an agent or employee of the client's attorney or as counsel for a co-defendant under a joint defense agreement, the only reasonable presumption is that the client intends the communication to be confidential.

As a policy matter, the joint defense doctrine is highly desirable because it allows for greater efficiency in the handling of litigation. Frequently, co-defendants with essentially the same interests must retain separate counsel to avoid potential conflicts over contingent or subsidiary issues in the case. To avoid duplication of efforts, such defendants should be able to pool their resources on matters of common interest. This can be done most effectively if both counsel can attend and participate in interviews with each other's clients and with employees of their clients. With multi-party cases becoming so frequent, and with litigation costs spiraling upwards—some would say out of control, the courts should not deny defendants the ability to pool their resources and coordinate their efforts on issues of common interest.

This case is a good example of a situation where the defendants have a common interest in defending against

the plaintiff's claims, but they also have a potential conflict that, although theoretical, requires each to retain separate counsel. In this situation it makes a great deal of sense for both defense counsel to work together in providing a joint defense. So long as the defendants and their counsel wish to do so, the courts should not impede their efforts by withdrawing the protection of the attorney-client privilege for statements made in the presence of both counsel.

Professor Wigmore has stated that "four fundamental conditions are recognized as necessary to the establishment of a privilege against the disclosure of communications:

"(1) The communications must originate in a *confidence* that they will not be disclosed.

"(2) This element of *confidentiality must be essential* to the full and satisfactory maintenance of the relation between the parties.

"(3) The relation must be one which in the opinion of the community ought to be sedulously *fostered.*

"(4) The *injury* that would inure to the relation by the disclosure of the communications must be *greater than the benefit* thereby gained for the correct disposal of litigation." 8 Wigmore, supra at §2285. (emphasis in original)

All four of these conditions exist for communications between attorney and client. These same four conditions continue to exist, to the same degree, where the attorney-client communications are made in the presence of counsel for a co-defendant participating in a joint defense.

Accordingly, I find that the statements made by management employees of Presbyterian to Presbyterian's

counsel, even though in the presence of Ms. Quinby's counsel, are privileged communications, the disclosure of which cannot be compelled.[1] This ruling does not prevent plaintiff from deposing Presbyterian's employees in depth to discover all relevant facts within their knowledge. The ruling merely prevents plaintiff from using the presence of counsel for Ms. Quinby, who shares a common interest in the defense of the case, to undermine the important attorney-client privilege.

Regarding plaintiff's request for production of all written documentation of meetings of these witnesses with counsel, this request is improper not only because it seeks disclosure of confidential attorney-client communications, but also because it seeks trial preparation material in violation of Pa.R.C.P. 4003.3.[2]

Finally, regarding plaintiff's request to depose defendants' legal counsel, no legitimate purpose could be served by such depositions, and I decline to sanction this practice.

For all of these reasons, the motion to compel is denied.

---

1. Some courts have held that a common interest alone is sufficient to preserve confidentiality; others require the existence of an agreement, express or implied, to conduct a joint defense. See generally, Howard W. Goldstein, *The Joint Defense Privilege: Is Common Interest Enough?*, N.Y. L.J., Mar. 6, 1997. I need not decide this issue because there *was* an express written joint defense agreement in this case. Counsel seeking to assure the confidentiality of disclosures in future cases would be well-advised to prepare such an agreement in advance of the disclosures.

2. "The discovery shall not include disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, *memoranda, notes or summaries,* legal research or legal theories." (emphasis added)

## TABLE OF AUTHORITIES
## RECOGNIZING JOINT DEFENSE OR
## COMMON INTEREST DOCTRINE

State:

Alabama R. Evid. 502; Alaska R. Evid. 503; Arkansas Unif. R. Evid. 502; California Evid. Code §952; Delaware R. Evid. 502; Florida Stat. Ann. §90.502; Hawaii R. Evid. 503; Idaho R. Evid. 502; Kentucky R. Evid. 503; Louisiana Code Evid. Ann. art. 506; Maine R. Evid. 502; Nebraska Rev. Stat. §27-503(2)(c); Nevada Rev. Stat. §49.095; New Hampshire R. Evid. 502; New Mexico R. Evid. 503; North Dakota R. Evid. 502; Oklahoma Stat. tit. 12, §2502; Oregon R. Evid. 503; South Dakota R. Evid. 502; Texas R. Evid. 503; Utah R. Evid. 504; Vermont R. Evid. 502; Wisconsin Stat. Ann. §905.03.

*Gordon v. Boyles,* 9 P.3d 1106 (Colo. 2000); State v. Cascone, 487 A.2d 186 (Conn. 1985); *Waste Management, Inc. v. International Surplus Lines Ins. Co.,* 579 N.E.2d 322 (Ill. 1991); *Corll v. Edward D. Jones & Co.,* 646 N.E.2d 721 (Ind. App. 1995); *Lipton Realty, Inc. v. St. Louis Housing Auth.,* 705 S.W.2d 565 (Mo. Ct. App. 1986); *Aetna Cas. and Sur. Co. v. Certain Underwriters at Lloyd's London,* 676 N.Y.S. 2d 731, 732 (N.Y. Sup. Ct. 1998); *Chahoon v. Commonwealth,* 62 Va. (21 Gratt.) 822 (1871); *State v. Emmanuel,* 259 P.2d 845 (Wash. 1953).

Federal:

*United States v. Bay State Ambulance and Hosp. Rental Service Inc.,* 874 F.2d 20 (1st Cir. 1989); *United States v. Schwimmer,* 892 F.2d 237 (2nd Cir. 1989), *cert. de-*

*nied,* 502 U.S. 810 (1991); *Eisenberg v. Gagnon,* 766 F.2d 770, 787-88 (3d Cir. 1985), *cert. denied,* 474 U.S. 946 (1985); *In re Bevill, Bresler & Schulman Asset Management Corp.,* 805 F.2d 120 (3rd Cir. 1986); *In re Grand Jury Subpoenas,* 902 F.2d 244 (4th Cir. 1990); *United States v. Stotts,* 870 F.2d 288 (5th Cir. 1989), *cert. denied,* 493 U.S. 861 (1989); *United States v. Moss,* 9 F.3d 543 (6th Cir. 1993); *United States v. McPartlin,* 595 F.2d 1321 (7th Cir. 1979); *John Morrell & Co. v. Local Union 304A,* 913 F.2d 544, 555-56 (8th Cir. 1990); *Hunydee v. United States,* 355 F.2d 183 (9th Cir. 1965); *United States v. Lopez,* 777 F.2d 543 (10th Cir. 1985); *In re Sealed Case,* 29 F.3d 715 (D.C. Cir. 1994).