**In Re: CONDEMNATION BY the CITY OF PHILADELPHIA of Certain Property Interests IN the 16.2626 ACRE AREA Generally Bounded by the Delaware Expwy (I–95) to the East, Bartram Avenue to the West, Philadelphia International Airport**

---

Employee Parking Facilities and Eighty–Fourth Street (Stricken) to the North, and to the South by an Irregular Line Parallel to and Commencing Approximately 112 feet South of Eighty–Sixth Street and Extending from Bartram Avenue to I–95.

Property Address: Known as Parcel "C" within the Eastwick Urban Renewal Area Plan of 1958 Philadelphia, Pennsylvania.

**Appeal of: City of Philadelphia.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 10, 2009.

Decided Sept. 8, 2009.

Elise Bruhl, Philadelphia, for appellant.

Amy Shellhammer, Philadelphia, for appellees.

BEFORE: COHN JUBELIRER, Judge, BUTLER, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

The City of Philadelphia (City) appeals from the January 15, 2009, order of the Court of Common Pleas of Philadelphia County, First Judicial District of Pennsylvania, (trial court) granting the Motion to Compel Discovery filed by Eastwick Development Joint Venture IX, L.P., and New Eastwick Corporation (together, Eastwick). The trial court ordered the City to produce documents exchanged between the City and the Redevelopment Authority of Philadelphia (RDA) and their respective attorneys related to Eastwick's interest in a tract of land known as "Parcel C," rejecting the City's assertion that the communications were shielded from discovery by the joint defense/common interest privilege. We affirm.

The relevant facts are not in dispute.[1] In 1999, RDA was the record owner of property situated in Philadelphia and known as "Parcel C" within the Eastwick Urban Renewal Area Plan of 1958. Pursuant to a longstanding redevelopment agreement (Redevelopment Agreement) between Eastwick and RDA, Eastwick was to acquire Parcel C and undertake commercial redevelopment of the property. However, when the City expressed an interest in developing Parcel C for expansion of airport employee parking, RDA agreed to cooperate with the City's efforts to acquire the property; RDA also agreed to allow the City's appraisal to determine the property's value. Because of Eastwick's interest in Parcel C, the City discussed its desire to purchase Parcel C from RDA with Eastwick but could not reach an agreement.

In 2001, the City administration proposed a bill to City Council seeking authorization to acquire Parcel C by agreement or condemnation. No vote was taken on the bill, and City Council requested additional information concerning Eastwick's rights to the property under its Redevelopment Agreement with RDA.

---

1. In its April 14, 2009, opinion, the trial court did not render any findings of fact but indicated that, in making its determination, it had "adopted the reasoning set forth in [Eastwick's] memorandum of law." (City's brief, appendix.) However, the brief filed by Eastwick in support of its Motion to Compel Discovery merely incorporates the motion by reference; the motion, in turn, provides no factual background. (R.R. at 32a–39a.) Fortunately, the parties' mutual representations on appeal provide the minimal facts necessary to decide the legal issues before us, and our recitation of the facts is based upon those representations.

RDA eventually filed a declaratory judgment action against Eastwick, unsuccessfully seeking to have the Redevelopment Agreement declared void. In 2003, City Council authorized the City to pursue the acquisition of Parcel C.

In November 2003, the City filed a Declaration of Taking condemning Parcel C. Eastwick filed a motion to intervene as a condemnee, which ultimately was granted pursuant to a court-approved stipulation between Eastwick and RDA. On April 6, 2006, the City deposited estimated just compensation with the trial court in the amount of $7,714,000. The trial court granted Eastwick's motion to distribute the escrow funds and, on January 16, 2007, ordered $6,970,181.00 plus interest be paid to Eastwick and $743,819.00 plus interest be disbursed to RDA.

In November 2007, Eastwick filed a motion for the appointment of a Board of Viewers. On December 28, 2007, the trial court granted the motion, appointed a Board of Viewers to determine the just compensation due to Eastwick and RDA and directed the parties to complete discovery in 120 days. Subsequently, the trial court granted Eastwick's motion in limine to preclude RDA's participation before the Board of Viewers.

The present discovery dispute began in January 2008, when Eastwick sent discovery requests to the City. At the City's request, Eastwick agreed to extend the discovery deadline to March 3, 2008. The City did not respond by that date; instead, on March 5, 2008, the City filed a motion for a protective order, arguing that the discovery requests sought irrelevant information, were unduly burdensome and included materials protected by the deliberative process privilege. The City subsequently sent written responses to the discovery requests, repeating the assertions set forth in the motion for a protective order. On April 8, 2008, the trial court denied the City's motion for a protective order and directed the City to respond to Eastwick's discovery requests within twenty days of April 15, 2008, the date on which the April 8th order was docketed. After the City failed to respond within that time, Eastwick filed a motion for sanctions, which the trial court granted on June 19, 2008. Ultimately, the discovery deadline was extended to September 23, 2008.

After securing new counsel in August 2008, the City produced thousands of pages of documents; the City also provided a privilege log listing documents the City would not produce based on its assertions that these documents were protected by an attorney-client, work product and/or joint defense privilege.[2] (R.R. at 42a–68a.) On October 31, 2008, Eastwick filed a motion to compel production of the communications between the City and RDA for which the City claimed the joint defense privilege. (R.R. at 32a–36a.) In its motion to compel, Eastwick argued that the joint defense privilege was not applicable because the City and RDA are not joint defendants but, rather, are adverse parties in the condemnation proceeding. Eastwick also asserted that, in order for the joint defense privilege to apply, the parties must have an identical legal interest as well as an express written agreement to pursue a joint defense. Eastwick maintained that, because the City and RDA were adverse parties in the condemnation proceeding, their interests were not common, let alone identical.

---

**2.** Pennsylvania Rules of Civil Procedure Nos. 4003.1, 4003.3 and 4011 prevent the discovery of privileged documents.

In its answer to the motion to compel, the City argued that it was entitled to assert the joint defense privilege because the City and RDA shared a common interest in determining the nature of Eastwick's rights under the Redevelopment Agreement and in promoting the City's acquisition of the property. (R.R. at 92a–96a.) By order filed January 15, 2009, the trial court granted Eastwick's motion to compel, indicating in its subsequent opinion that it had adopted the reasoning set forth by Eastwick in its memorandum of law. The City now appeals to this court.[3]

## I. Collateral Order

As directed by this court's March 13, 2009, order, the City first addresses the issue of whether the January 15, 2009, order is appealable as a collateral order under Pa. R.A.P. 313. Unless otherwise permitted by statute or rule, an appeal may be taken only from a final order. *Ben v. Schwartz*, 556 Pa. 475, 729 A.2d 547 (1999). A final order ordinarily is one that ends the litigation or disposes of the entire case. Id. However, Pa. R.A.P. 313 provides that an appeal may be taken as of right from a collateral order; the rule defines a collateral order as an order that is separable from and collateral to the main cause of action, involving both a right that is too important to be denied review and a claim that will be irreparably lost if review is postponed until final judgment in the case.

Relying on *Ben*, the City argues that the trial court's January 15, 2009, order satisfies these criteria, and we agree. Because we can address the issue of privilege, which involves questions concerning the preparation and purpose of the documents at issue, without considering the merits of the underlying action, which relate to the value of Parcel C, we first conclude that the order is separable from the main cause of action. In determining whether the right asserted is important, we are mindful that the issue must involve rights deeply rooted in public policy going beyond the particular litigation at hand. *Ben*. As explained more fully below, the joint defense privilege asserted here is an extension of the attorney-client privilege, a right that is firmly rooted in public policy and essential to parties in every action and, therefore, too important to be denied review. Finally, there is no question that if review of this issue is postponed and the documents are produced, the City's claim of privilege will be irreparably lost. Accordingly, we conclude that the trial court's January 15, 2008, order satisfies the criteria for a collateral order set forth by Pa. R.A.P. 313.

## II. The Joint Defense/Common Interest Privilege

The merits of this appeal concern whether the trial court properly ordered the City to produce documents that the City asserts are protected by a "joint defense," or "common interest," privilege, which essentially is an extension of the attorney-client privilege. The attorney-client privilege applies in both criminal and civil matters, 42 Pa.C.S. §§ 5916 and 5928, to confidential communications made by a client to his or her attorney in connection with legal services and by an attorney to the client when based upon confidential facts that the client has disclosed. *Slusaw v. Hoffman*, 861 A.2d 269 (Pa.Super.2004). When the client is a corporation, the privilege extends to communications between its attorney and agents or employees authorized to act on the corporation's behalf.

---

3. Generally, in reviewing a trial court's order concerning discovery, an appellate court applies an abuse of discretion standard. *McNeil v. Jordan*, 586 Pa. 413, 894 A.2d 1260 (2006).

*Upjohn Co. v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981).

 Confidentiality is key to the privilege, and the presence of a third-party during attorney-client communications will generally negate the privilege; presumably, the client does not intend communications to be confidential if they are heard by someone else. *Johnston v. Johnston,* 346 Pa.Super. 427, 499 A.2d 1074 (1985). However, the attorney-client privilege has been extended to apply to co-defendants and their attorneys working collectively. Thus, where a number of defendants and their attorneys participate in a common group defense, the attorney-client privilege is not waived by the sharing of confidential communications to those additional defendants and attorneys for the benefit of the group, or "joint defense." *Commonwealth v. Scarfo,* 416 Pa.Super. 329, 611 A.2d 242 (1992), *appeal denied,* 535 Pa. 633, 631 A.2d 1006 (1993), superseded by statute as stated in *Commonwealth v. Buck,* 551 Pa. 184, 709 A.2d 892 (1998). In *Scarfo,* our superior court held that defendants have both the right to prepare a group defense and the right to communicate privately with counsel. Constitutional principles forbid requiring a party to waive one of these rights in order to exercise the other. *Id.*

 Our research has identified only a few Pennsylvania cases that address the joint defense or common interest privi-

lege.[4] Following the Superior Court's decision in *Scarfo,* which involved criminal defendants, the common pleas courts in *Executive Risk Indemnity, Inc. v. Cigna Corporation,* 81 Pa. D & C 4th 410 (2006), and *Young v. Presbyterian Homes, Inc.,* 50 Pa. D. & C. 4th 190 (2001), recognized the joint defense or common interest privilege in the context of civil cases. In *Young,* the court explained its reasoning as follows:

> As a policy matter, the joint defense doctrine is highly desirable because it allows for greater efficiency in the handling of litigation. Frequently, co-defendants with essentially the same interests must retain separate counsel to avoid potential conflicts over contingent or subsidiary issues in the case. To avoid duplication of efforts, such defendants should be able to pool their resources on matters of common interest. This can be done most effectively if both counsel can attend and participate in interviews with each other's clients.... With multi-party cases becoming so frequent, and with litigation costs spiraling upwards-some would say out of control, the courts should not deny defendants the ability to pool their resources and coordinate their efforts on issues of common interest.

*Young,* 50 Pa. D. & C. 4th at 198 (quoting *McCaffrey v. Estate of Brennan,* 533 S.W.2d 264, 268 (Mo.Ct.App.1976)). Although many issues concerning the joint

---

4. A number of federal courts, including the Third Circuit, have held that "[t]he joint defense privilege protects communications between an individual and an attorney for another when the communications 'are part of an ongoing and joint effort to set up a common defense strategy.'" *In re Bevill, Bresler and Schulman Asset Management Corporation,* 805 F.2d 120, 126 (3d Cir.1986). In order to establish the existence of a joint defense privilege, the party asserting the privilege must show that: (1) the communications were made in the course of a joint defense effort; (2) the statements were designed to further that effort; and (3) the privilege has not been waived. Id. See also *Eisenberg v. Gagnon,* 766 F.2d 770, 787–88 (3d Cir.), *cert. denied,* 106 S.Ct. 342, 343, 474 U.S. 946, 88 L.Ed.2d 290 (1985), holding that "[c]ommunications to an attorney to establish a common defense strategy are privileged even though the attorney represents another client with some adverse interests."

defense or common interest privilege have yet to be addressed by our courts, various decisions have emphasized that a shared common business interest or an interest that is solely commercial is insufficient to warrant application of the privilege. *Katz v. AT & T Corp.*, 191 F.R.D. 433 (E.D.Pa. 2000); *Executive Risk.*

In the present matter, the City argues that communications between the City and RDA concerning Eastwick's interest in Parcel C are shielded by the common interest privilege. However, the City and RDA are not co-defendants in this case or even defendants in similar actions. Nevertheless, the City asserts that the joint defense or common interest privilege applies to communications between the City and RDA and their respective counsel because, "[w]hen Eastwick claimed redevelopment rights to Parcel C, both the City and the RDA shared common legal interests in determining what rights Eastwick had—if any—in Parcel C, and in converting Parcel C to municipal use for the City." [5] (City's brief at 24.)

The City has not elaborated on the nature of this alleged "common legal interest." Instead, the City argues that the trial court erred in adopting the reasoning set forth in Eastwick's motion, specifically, by implicitly holding that the parties' interests must be identical and the parties must have entered into a written agreement in order for the common interest privilege to apply. However, in its motion, Eastwick also asserted that the parties did not share a common interest in these proceedings. Thus, it is not necessary or appropriate to address issues concerning the extent of the parties' common interest or the evidence required to prove the same until we first determine whether the record establishes, at a minimum, that the City and RDA in fact share any "common legal interest" with regard to these proceedings. We conclude that they do not.

The undisputed facts undermine the City's assertion that it shares a common *legal* interest with RDA.[6] Far from being co-defendants, the City and RDA were adverse parties in the present condemnation proceedings. The mere assertion that the parties "supported" each other's prior, separate, legal pursuits (the City's request for permission to acquire Parcel C and RDA's declaratory judgment action), even if proved, sheds no light on the underlying common legal interest allegedly motivating such support. The City has not offered any facts or explanation demonstrating how RDA would benefit from the City's success in this condemnation action, and, based on this record, we cannot discern the legal interest allegedly shared by RDA in promoting the City's acquisition of Parcel C.

Indeed, the record reflects only that the City and RDA have a common desire to minimize the financial obligations each owes to a common third party, arising from separate facts and distinct legal theories. The City sought to reduce the cost of acquiring Parcel C in the condemnation

---

5. The City states that these common legal interests arose in the course of the discussions, from 1999 to 2003, wherein the City and RDA agreed to share information with the joint intent of facilitating the transfer of Parcel C to the City at an agreed upon price. As evidence of the parties' common legal interests, the City cites its introduction of bills to City Council in 2001 and 2003, which was assented to but not actively supported by the RDA, and the RDA's declaratory judgment action, to which the City was not a party but which it "supported." (City's brief at 25.)

6. Although courts have used the phrase "common interest" we believe that the phrase used by the City—"common *legal* interest"—more accurately describes the nature of the privilege.

proceeding, while RDA sought to reduce its obligation to Eastwick under the Redevelopment Agreement and thereby maximize its gain from the City's condemnation. Evidence that these parties supported each other's separate efforts by sharing information and/or legal strategy is *not* evidence that the two shared a common legal interest. Absent any explanation as to how or why RDA benefits from the City's acquisition of Parcel C, we must conclude that the City's conclusory assertions of a common legal interest between the City and RDA are insufficient as a matter of law to warrant application of a joint defense or common interest privilege.

Accordingly, we affirm.

## ORDER

AND NOW, this 8th day of September, 2009, the order of the Court of Common Pleas of Philadelphia County, First Judicial District of Pennsylvania, dated January 15, 2009, is hereby affirmed.