2026 PA Super 118

| | |
|---|---|
| SOLID WASTE SERVICES, INC. (J.P. MASCARO AND SONS), FR&S, INC. (PIONEER CROSSING LANDFILL), AND MB INVESTMENTS | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| EMBER PARTNERS, LP, ARES EIF MANAGEMENT, LLC, BIRDSBORO POWER HOLDINGS I, LLC, BIRDSBORO POWER, LLC, AND EMBERCLEAR MANAGEMENT, INC. | No. 1674 EDA 2025 |
| APPEAL OF: BIRDSBORO POWER, LLC, BIRDSBORO POWER HOLDINGS I, LLC, AND ARES EIF MANAGEMENT, LLC | |

Appeal from the Order Entered June 4, 2025
In the Court of Common Pleas of Montgomery County
Civil Division at No(s):  2020-12835

BEFORE:   LAZARUS, P.J., PANELLA, P.J.E., and STEVENS, P.J.E.[*]

OPINION BY PANELLA, P.J.E.:                **FILED JUNE 9, 2026**

Birdsboro Power, LLC, Birdsboro Power Holdings I, LLC, and Ares EIF Management, LLC ("Birdsboro Appellants") appeal from the June 4, 2025 order granting the omnibus motion to compel the production of documents withheld by the Birdsboro Appellants filed by Solid Waste Services, Inc. (J.P. Mascaro and Sons) ("Mascaro"). Pertinent to this appeal, the Birdsboro Appellants

_____

[*] Former Justice specially assigned to the Superior Court.

relied on the "common interest" privilege to contend they are legally entitled to withhold certain requested documents. We agree with the trial court that while there may have been a common interest between the applicable parties earlier in the negotiations and dealings, there is no evidence of a common interest at the times relevant to the instant lawsuit, nor did the Birdsboro Appellants meet their burden to prove the existence of an agreement to share the common interest privilege at any time. Accordingly, we affirm.

The record in this case is extensive, totaling over 10,000 pages. However, the pertinent underlying facts remain largely undisputed. As such, we accept the Birdsboro Appellants' recitation of the factual history, for ease of disposition, as their factual summation is supported by the record. Birdsboro Appellants summarize the underlying matter for purposes of this appeal as follows:

> This action concerns the Birdsboro Power Plant, a natural gas-fired plant that began active development in 2015. At that time, Birdsboro Power, a special purpose vehicle created to own the project, was wholly owned by [] Ember Partners, L.P. ("Ember"). Ember selected non-party [Power Plant Management Systems ("PPMS")] as project manager.[1]
>
> Before construction began, Birdsboro Power contracted with Mascaro, a waste hauler [and owner of a landfill], to dispose of the waste generated by the demolition of a former steel foundry and other buildings on the site, as well as for the construction waste that would follow. The ensuing November 2016

---

[1] "[PPMS] is the contractor for the Birdsboro Appellants that manages the Birdsboro Power Plant. PPMS was also involved in the development of the power plant contemplated to be situated in Birdsboro Borough." Trial Court Opinion, 8/14/25, at 2-3.

- 2 -

Comprehensive Waste Services Agreement ("Waste Agreement") designated Mascaro and its affiliates as Birdsboro Power's exclusive waste services provider for certain types of waste.

**Separately**, in 2016 and 2017, Mascaro and Ember negotiated the terms of a land-swap agreement that would grant easements over certain of Mascaro's land (the "Rights of Way") to Birdsboro Power in exchange for Birdsboro Power's conveyance of land to Mascaro. Though Birdsboro Power had an alternative route available should negotiations with Mascaro falter, Birdsboro Power preferred to access these lines through easements over Mascaro's land.

On February 10, 2017, Ember sold Birdsboro Power to [] Birdsboro Power Holdings I, LLC, an affiliate of [] Ares EIF Management LLC. Under the sale agreement, Birdsboro Power Holdings paid $10 million to Ember upfront, with an additional $8 million available to Ember—but only if Birdsboro Power acquired the Rights of Way by June 15, 2017.

[Shortly after execution of the Waste Agreement], Mascaro began complaining to Birdsboro Power and PPMS that the amount of construction waste generated by the project to date was below its expectations. Mascaro asserted that prior to execution of the Waste Agreement (i.e., when Birdsboro Power was owned by Ember), certain representations about the tonnage of waste to be disposed by Mascaro in 2017 had been made by one or both of PPMS or Birdsboro Power, and insinuated that it might bring suit on the grounds that these representations were false and/or that the smaller-than-expected tonnage constituted a breach of the Waste Agreement. … PPMS was included in certain communications Birdsboro Power had with its counsel concerning these matters.

In early May 2017, in connection with the then-still-ongoing land-swap negotiations between Birdsboro Power and Mascaro, Mascaro began insisting that Birdsboro Power guarantee that the project would generate a certain amount of waste in the future. Under this new proposal, if Birdsboro Power did not generate a certain tonnage of waste for Mascaro's disposal by a certain date, then Mascaro would be entitled to payment for the difference—a so-called "put or pay" mechanism. Birdsboro Power was unwilling to accept Mascaro's "put or pay" proposal.

On May 12 or 13, 2017, with the prospects for an agreement for the Mascaro easements between Birdsboro Power and Mascaro dimming—threatening the $8 million payment Ember was eligible for only if the Required Rights of Way were procured by June 15— Ember agreed to be Mascaro's counterparty to the Put or Pay Provision. Ember and Mascaro (but not any of the Appellants) would ultimately sign an Easements/Benefits Agreement, through which Ember agreed to pay Mascaro (1) $1,137,500 "as remedial compensation for past shortfalls in tonnage of waste and recyclables that were represented to be available … but were, in fact, not available" and (2) $6,700,000 as a down payment for Ember's "put or pay" obligations. Up to the entirety of the $6,700,000 tranche could be recouped by Ember if the Birdsboro Power project generated a certain amount of waste thereafter.

Also in May 2017, Birdsboro Power and Mascaro resumed negotiations of a modified land-swap agreement, which later became known as the Conveyance Agreement. The Conveyance Agreement did not include any "put or pay" obligation. The Conveyance Agreement (between Birdsboro Power and Mascaro) and the Easements/Benefits Agreement (between Ember and Mascaro) were both signed on May 22, 2017.

Birdsboro Power sought legal advice from its counsel concerning both the Conveyance Agreement and the Easements/Benefits Agreement prior to their signing. **Given the nexus between these agreements and the assertions made by Mascaro earlier that month, PPMS was included in certain of these communications with counsel.**

Ultimately, Ember's minimum waste tonnage ("put") obligations under the Easements/Benefits Agreements were not met, triggering the "pay" half of Ember's "put or pay" obligation. Ember and Mascaro thereafter asserted, for the first time, that Birdsboro Power had orally promised to perform Ember's contractual promises to Mascaro under the Easements/Benefits Agreement, including the "put or pay" contained in paragraphs 4 and 6, before that agreement was signed. **Because PPMS was involved in the precontractual negotiations (as described above), PPMS was included in certain communications between Birdsboro Power and its counsel concerning the alleged oral promise once Ember and Mascaro began making such allegations.**

Appellants' Brief, at 5-10 (citations omitted and emphases added).

During discovery, the Birdsboro Appellants withheld a number of documents based on privilege claims, including numerous documents and communications shared with third party PPMS.

On December 18, 2023, Mascaro filed an omnibus motion to compel Birdsboro Appellants to produce (1) financial statements and projections requested in Mascaro's first set of requests for production of documents; (2) an itemized privilege log in accordance with Pennsylvania law, sufficient to allow Mascaro to determine whether the documents withheld were, in fact, privileged; and (3) all allegedly privileged documents shared with third-party PPMS but withheld on the basis of the "common interest doctrine" that were not related to Birdsboro Appellants' stated common legal interest with PPMS.

More specifically, Mascaro asserted that in response to Mascaro's discovery requests, the Birdsboro Appellants asserted attorney-client privilege, but had not produced a sufficient privilege log to establish such privilege. Pertinently, Mascaro argued that

> while the Birdsboro [Appellants] have claimed that the "common interest doctrine" protects privileged communications shared with a third party, PPMS, their privilege log is not sufficient to determine what documents this alleged "common interest" protections applies to, whether, as required by law, attorneys for both PPMS and the Birdsboro [Appellants] were a part of such communications, or whether such communications concerned the alleged common legal interest between the Birdsboro [Appellants] and PPMS.

Mascaro Motion to Compel, 12/18/23, at 5. Specific to documents Birdsboro Appellants were withholding on the basis of the common interest privilege, Mascaro argued that even if a common legal interest sufficient to trigger common interest protection had been asserted, the Birdsboro Appellants had not provided a privilege log sufficiently describing the documents over which they are asserting the common interest privilege. Further, Mascaro argued the Birdsboro Appellants improperly withheld communications with PPSM, regardless of the subject matter, and regardless of whether such communications relate to the alleged subject of the common legal interest, *i.e.*, waste representations, or any other subject.

On January 9, 2024, Birdsboro Appellants filed an answer in opposition to the omnibus motion to compel. In an accompanying memorandum of law, Birdsboro Appellants asserted they shared a common legal interest with PPMS regarding: "(1) the performance of the Comprehensive Waste Services Agreement between Mascaro and Birdsboro Power (November 8, 2016) (referred to as the "Waste Agreement"); (2) negotiations relating to the Conveyance Agreement between Mascaro and Birdsboro Power (May 22, 2017) and the Easements/Benefits Agreement between Mascaro and Ember (May 22, 2017); and (3) any subsequent allegations that the Birdsboro [Appellants] were obliged to perform the Easements/Benefits Agreement."

In support of the existence of a common-interest between Birdsboro Appellants and PPMS, Birdsboro Appellants relied on statements from their in-

house counsel, Noah Ehrenpreis. Specifically, Ehrenpreis had testified at his deposition that "there were allegations ... that various people at PPMS and ... at Ares were making misrepresentations. We believe we had a common interest at that point." Memorandum of Law in Opposition to Motion to Compel, 1/9/24, at 13 (citation omitted). He also testified that "he believe[s] there were conversations of a privileged nature about the common interest issue [around] May 22, 2017 ...." *Id.* (citation omitted).

On January 17, 2024, the trial court directed Birdsboro Appellants to supply sufficient privilege logs. After Birdsboro provided updated privilege logs, Mascaro filed a supplemental brief, in which it challenged, among other things, the application of the common interest privilege. Following additional responsive briefs from both parties, the court entered an order on June 4, 2025, granting Mascaro's motion to compel, related to the common interest claims, and ordered Birdsboro Appellants to produce various documents. This timely appeal followed.

This appeal concerns whether the trial court properly ordered Birdsboro Appellants to produce documents that Birdsboro Appellants assert are protected by the common interest privilege.

Preliminarily, we note that, on appeal, Birdsboro Appellants rely exclusively on the definition of the common interest privilege as provided in Section 76 of the Restatement (Third) of the Law Governing Lawyers. Birdsboro Appellants exclusive reliance on the Restatement is confusing, at

best, given that they concede that Section 76 has only been discussed in *dicta* in one Pennsylvania Supreme Court case, *see Karoly v. Mancuso,* 65 A.3d 301, 315 (Pa. 2013). Notably, our Supreme Court cited Sections 75-76 in its brief mention of the common interest privilege in *Karoly*, but did not formally adopt it. The lack of adoption of Section 76 of the Restatement is noticeable from even a brief glance at Birdsboro Appellants' brief, as the only cases they could find in support of their Restatement discussion are a bankruptcy court decision out of Delaware, and a patent litigation case out of New York State.

Meanwhile, Birdsboro Appellants fail to discuss any of the numerous cases from our sister court, the Commonwealth Court of Pennsylvania, that have discussed the common interest privilege. We are obligated to review these Commonwealth Court decisions. *See Miller v. Bunting*, 335 A.3d 733, 760, FN14 (Pa. Super. 2025) (recognizing that while this Court is not bound by decisions of the Commonwealth Court, such decisions provide persuasive authority, and we may turn to our colleagues on the Commonwealth Court for guidance when appropriate).

Further, while decisions from federal courts, such as the United States District Courts of Pennsylvania or the third circuit court of appeals, are not binding on this Court, those decisions are still considered persuasive authorities, which we may use for guidance. *See Bochetto v. Piper Aircraft Co.*, 94 A.3d 1044, 1050 (Pa. Super. 2014) (noting that although not binding on us, we may cite federal authority for its persuasive value). Many decisions

out of those courts have discussed this very topic as well, and an analysis of the discussions from those courts would have provided a much more developed argument for this Court.

What Birdsboro Appellants appear to be avoiding is that the common interest privilege is not a stand-alone privilege. Rather, it is essentially an extension of the attorney-client privilege.

> In Pennsylvania, the attorney-client privilege is codified as follows: "In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client." 42 Pa.[C.S.A.] § 5928. In 2019, the Pennsylvania Supreme Court re-examined the contours of attorney-client privilege. A party invoking attorney-client privilege must prove that:
>
>> 1) [t]he asserted holder of the privilege is or sought to become a client[;]
>>
>> 2) [t]he person to whom the communication was made is a member of the bar of a court, or his subordinate[;]
>>
>> 3) [t]he communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort[;]
>>
>> 4) [t]he privilege has been claimed and is not waived.
>
> The Supreme Court had previously made clear that as to the third factor—the communications at issue must be made for the purposes of securing legal advice—"the privilege does not extend to business advice or protect clients from factual investigations." If this four-part test is satisfied, the burden shifts to the party seeking disclosure to explain why the communication should not be considered privileged. For corporations, "the attorney-client privilege 'extends to communications between its attorney and

agents or employees authorized to act on the corporation's behalf.'"

***Sandoz Inc. v. Lannett Company, Inc.***, 570 F.Supp.3d 258, 264 (E.D. Pa. 2021) (footnotes and most citations omitted). "Attorney-client privilege will not ordinarily attach to communications made in the presence of a third party, and disclosing privileged communications to a third party waives the privilege." ***Id.*** at 265 (citation omitted).

"The common interest privilege "function[s] as an exception to the general rule that disclosure of information to third parties constitutes a waiver of the attorney-client privilege." ***Id.*** at 267 (citing ***In re Fortieth Statewide Investigating Grand Jury***, 191 A.3d 750, 763 (Pa. 2018)). The ***Sandoz*** court indicated that the Pennsylvania Supreme Court has referenced the doctrine with apparent approval, but acknowledged that there are no decisions from the Supreme Court defining the reach of the doctrine. Accordingly, the ***Sandoz*** court looked to our sister court for assistance:

> The Commonwealth Court has held that a party seeking to invoke the common interest doctrine must show:
>
> > (1) the parties' agreement to same; (2) a common-interest in the litigation or a jointly shared litigation strategy; (3) the communications were made pursuant to such agreement, and (4) the continued confidentiality of the communications, *i.e.*, the communications were not disclosed to other third parties such that the privileges were waived.
>
> ***PPUC v. Sunrise Energy, LLC****, 177 A.3d 438, 445 (Pa. Commw. Ct. 2018). The Pennsylvania courts have not addressed whether an express written agreement is required to establish the privilege. Federal courts applying the privilege appear to assume that no written agreement is necessary. …

- 10 -

In determining the scope of the common interest privilege, Pennsylvania courts have drawn upon federal law to conclude that "a shared common business interest or an interest that is solely commercial is insufficient to warrant application of the privilege." ***In re Condemnation by City of Philadelphia***, 981 A.2d 391, 398 (Pa. Commw. Ct. 2009)[]. A prerequisite for application of the privilege is that the parties share a common *legal* interest. ***Id.*** The Commonwealth Court did not precisely define what is required, but observed that, standing alone, "[e]vidence that these parties supported each other's separate efforts by sharing information and/or legal strategy is *not* evidence that the two shared a common legal interest." ***Id.*** at 399 (emphasis in original).

In the absence of definitive guidance from Pennsylvania courts, district courts have once again looked to federal caselaw. The leading Third Circuit case on the common interest privilege is ***In re Teleglobe Communications Corp.***, 493 F.3d 345 (3d Cir. 2007). In describing the burden of the party asserting privilege, the Court held that "members of the community of interest must share at least a *substantially similar* legal interest." This includes "a litigated or nonlitigated matter" and extends to even a "non-party to any anticipated or pending litigation."

**…**

When discussing the common interest privilege in ***In re Condemnation***, the Commonwealth Court relied upon ***Young v. Presbyterian Homes, Inc.***, 50 Pa. D. & C.4th 190 (Pa. Com. Pl. 2001), an opinion authored by respected trial Judge Alan Black of Lehigh County. ***Young*** preserves the attorney-client privilege in common interest cases where (1) the client makes a statement in the presence of their attorney and counsel to another entity; and (2) where the client makes a statement to an agent of their attorney for the purposes of legal advice. Though some language in ***Young*** could be read to suggest that any participation by an attorney will suffice, Judge Black's ultimate conclusion was that "courts should not impede their efforts by withdrawing the protection of the attorney-client privilege for statements made in the presence of *both counsel.*" ***Id.*** at 199. (emphasis added). In similar fashion, another respected Pennsylvania trial judge found the privilege available "to co-defendants and their lawyers working collectively." ***Exec. Risk Indem., Inc. v. Cigna Corp.***, 81 Pa. D. & C.4th 410 (Com. Pl. 2006) (Bernstein, J.). These cases

from Pennsylvania courts strongly favor the conclusion that [at] least one attorney must participate for the privilege to apply.

The language employed by the Third Circuit in **Teleglobe** also suggests a requirement of attorney participation. The Court stated that "the community-of-interest privilege allows attorneys representing different clients with similar legal interests to share information without having to disclose it to others." 493 F.3d at 364. "To be eligible for continued protection, the communication must be shared with the *attorney* of the member of the community of interest." **Id.** "Sharing the communication directly with a member of the community may destroy the privilege." **Id.** The Circuit [Court] also reasoned that "[t]he attorney-sharing requirement helps prevent abuse by ensuring that the common-interest privilege only supplants the disclosure rule when attorneys, not clients, decide to share information in order to coordinate legal strategies." **Id.** at 365.

**Sandoz**, 570 F.Supp.3d at 267-70. The **Sandoz** court definitively held "that an attorney must be involved for the common interest privilege exception to attach." **See id.** at 270. Acknowledging that "[t]here is less clarity as to whether attorneys for *both* parties must be involved in the exchange," but with the absence of clear guidance from Pennsylvania appellate courts, the **Sandoz** court "default[ed] to the overarching principle emanating from the Supreme Court, that exceptions to disclosure are to be construed narrowly" and therefore found the privilege waived "where both parties were not represented by counsel in an exchange of information[.]" **Id.** at 270-71; **see also Serrano v. Chesapeake Appalachia, LLC**, 298 F.R.D. 271, 284 (W.D. Pa. 2014) (noting Pennsylvania law remains "unsettled" but concluding that the common interest doctrine applies to attorney work product).

From a review of the record, it is clear that Birdsboro Appellants are aware of our sister courts' and federal courts' take on the common interest privilege, as discussed above, as they cited to these cases in disputing the common interest privilege's application to documents they wanted to obtain from another party in this matter. ***See*** Birdsboro Appellants' Motion to Compel Ember Partners, at 4-5.[2] They also cited to the same cases in their

_____

[2] Specifically, the motion to compel averred:

> 16. However, as counsel for Birdsboro Power and Birdsboro Holdings argued during the February 18, 2022 hearing and asserted in detail with legal support in their letter dated March 2, 2022, no common-interest privilege can apply as a matter of law because Ember Partners/EmberClear and Plaintiffs are adverse to each other in this action. ***See Sandoz*** []; ***see also In re Condemnation by City of Philadelphia*** [] ("[A] shared common business interest . . . is insufficient to warrant application of the privilege.") [].
>
> 17. Moreover, the doctrine does not protect communications and documents generated prior to the filing of the lawsuit. ***Pennsylvania PUC v Sunrise Energy, LLC***, 177 A.3d 436 (Pa. Commw. Ct. 2018).
>
> 18. In addition, the doctrine applies only when each party to the communication has a lawyer present for the communication. ***In re Condemnation***, 981 A.2d at 398 (holding that the common interest exception arises where "co-defendants with essentially the same interests must retain separate counsel to avoid potential conflicts over contingent or subsidiary issues in the case.") (citations omitted).
>
> 19. When only non-lawyers (e.g., businesspeople for each party) or only one side's lawyers are involved in the communication, then the doctrine cannot apply. [] ***Teleglobe Communs. Corp. v. BCE, Inc. (In re Teleglobe Communs. Corp.)***, 493 F.3d 345,

*(Footnote Continued Next Page)*

memorandum of law in opposition to Mascaro's motion to compel. **See** Memorandum of Law in Opposition to Motion to Compel, 1/9/24, at 12-13. Only now do they limit their discussion to the Restatement's definition.

Here, the trial court found that the claimed common-interest between Birdsboro Appellants and PPMS—related to alleged misrepresentations about amounts of waste to be delivered pursuant to the Waste Agreement—ended at the commencement of the Overarching Agreement in May 2017. **See** Trial Court Opinion, 8/14/25, at 8. Therefore, any documents dated after May 22, 2017 would not be protected by a privilege based on that common-interest. **See id.**

As to the time period from November 8, 2016 (execution of the Waste Agreement) through May 22, 2017 (execution of the Overarching Agreement), the court found that even if a common interest existed prior to execution of the Overarching Agreement, Ehrenpreis' testimony alone was not sufficient to establish an agreement of such. **See id.** at 9. Finally, no evidence was provided that PPMS ever agreed to pursue a common legal strategy, whether written, oral, or otherwise. Accordingly, Birdsboro Appellants failed to meet their burden of proof. **See id.** at 9-10. We must agree.

_____

365 (3d Cir. 2007) (The common interest doctrine applies "when attorneys, not clients, decide to share information in order to coordinate legal strategies."').

Birdsboro Appellants Motion to Compel Ember Partners, at 4-5.

Birdsboro Appellants argue that the court erred in holding that Birdsboro Appellants failed to prove the common interest privilege protects certain communications between Birdsboro Appellants and PPMS because the common interest privilege does not require an express common interest agreement, and in any event, Birdsboro Appellants proved that they and PPMS entered into such an agreement based on Ehrenpreis' testimony. Finally, Birdsboro Appellants argue the trial court erred in holding that any common interest between Birdsboro Power and PPMS "ended at the commencement of the Overarching Agreement of May 22, 2017."

Based on Birdsboro Appellants' own recitation of what occurred here, as detailed above, they willingly continued to share privileged communications with a third party only because of that third party's previous involvement in a separate, and since settled accusation. Specifically, around April 2017, Mascaro accused either or both of Birdsboro and PPMS of misrepresenting the tonnage of waste to be disposed by Birdsboro. At that time, Birdsboro and PPMS shared communications regarding these allegations and potential claims.

However, after those initial allegations, Birdsboro was asked, *solely*, to guarantee, in a new proposal, that the project would generate a certain amount of waste in the future. On May 22, 2017, Ember ultimately signed an "Easements/Benefits Agreement" with Mascaro through which Ember agreed to be responsible for any shortfalls in tonnage waste. On the same day,

Birdsboro signed a Conveyance Agreement with Mascaro, ending negotiations of a modified land-swap agreement. As the Easements/Benefits Agreement had the effect of settling the accusations/claims against Birdsboro and PPMS, having to do with misrepresentations of waste tonnage, the Conveyance Agreement did not concern those claims at all.

The instant suit followed the creation of those two agreements. Specifically, Ember and Mascaro now assert that Birdsboro, *alone*, orally promised to perform Ember's contractual promises to Mascaro under the Easements/Benefits Agreement. PPMS had nothing to do with that agreement, and has not been accused of having anything to do with that agreement. Birdsboro's decision to include PPMS on communications having to do with such claims, simply because PPMS was involved at some point during precontractual negotiations, but not during the specific portion of precontractual negotiations having to do with the instant agreements, was entirely up to Birdsboro and had nothing to do with a shared legal interest.

While a formal written document may not be necessary to establish an agreement to invoke the common-interest privilege, an agreement to employ the common interest doctrine must be established in general; and that burden remains on the party asserting the privilege. **See Sandoz**, 570 F.Supp.3d at 267. Birdsboro Appellants offer nothing in addition to the one statement made by Ehrenpreis. That statement alone simply does not prove much. While Ehrenpreis contends they shared a "common interest at that point,"

Memorandum of Law in Opposition to Motion to Compel, 1/9/24, at 13 (citation omitted), it is not clear that PPMS actually shared in any specific agreement, let alone an agreement to be subject to the common interest privilege. If there were an agreement, there is no evidence of what that agreement actually entailed. The privilege requires that the parties agreed to be subject to the privilege for purposes of pursuing a similar legal goal. There is nothing in the record to prove the existence of such an agreement. Accordingly, we find the trial court did not abuse its discretion in finding Birdsboro Appellants failed to meet their burden of proof.

Based on the above, we affirm the trial court's order granting Mascaro's omnibus motion to compel Birdsboro Appellants' production of documents.

Order affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/9/2026