IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Public Utility :
Commission, :
    Petitioner :
       : No.  503 C.D. 2017
    v. :
       : Argued:  December 4, 2017
Sunrise Energy, LLC, :
    Respondent :


BEFORE: HONORABLE PATRICIA A. McCULLOUGH, Judge
    HONORABLE MICHAEL H. WOJCIK, Judge
    HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION BY
JUDGE McCULLOUGH       FILED:  January 12, 2018


    The Pennsylvania Public Utility Commission (PUC) petitions for review of the March 27, 2017 final determination of the Office of Open Records (OOR), granting Sunrise Energy, LLC (Sunrise) access to certain information held by the PUC and related to an identified Commonwealth Court proceeding.


## Facts and Procedural History

    On October 17, 2016, David Hommrich, on behalf of Sunrise (together, the Requester), submitted a request to the PUC pursuant to Pennsylvania's Right to Know Law (RTKL),[1] seeking all email and correspondence between the PUC staff and First Energy Corporation (First Energy) regarding the case of *Sunrise Energy, LLC v. First Energy Corporation* (Pa. Cmwlth., No. 1282 C.D. 2015, October 14, 2016), from

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

the past year. The PUC identified 64 emails in response to the request, and explained that, while the PUC was not a party to the related litigation, it participated as *amicus curiae*. The PUC denied the request on November 22, 2016, asserting that the requested documents were protected from disclosure by both the attorney-work-product doctrine and the attorney-client privilege. The Requester appealed the PUC's denial to the OOR on December 9, 2016. (Reproduced Record (R.R.), 503 C.D. 2017, at Item No. 2.)

The basis of the appeal was limited to the issue of whether the requested documents were protected by the attorney-work-product doctrine. The PUC again argued that the emails and correspondence were protected because they related to the PUC's submission of an *amicus* brief on behalf of First Energy. The PUC noted that the communications related to ongoing litigation between the Requester and First Energy regarding the Alternative Energy Portfolio Standards Act (AEPS Act),[2] and that it believed that the Requester would ultimately pursue litigation against the PUC to challenge its implementation of the AEPS Act. Further, the PUC contended that the Requester lacked standing to bring the appeal because Sunrise was not named in the original request, and that the issue should be resolved before the court of common pleas as a discovery issue, rather than by the OOR. To support its position, the PUC submitted the affidavits of its Open Records Officer, Deputy Chief Counsel, and Assistant Counsel.

In its brief, the Requester contended that the PUC did not sufficiently demonstrate that the requested materials constituted attorney-work-product, and, even if the doctrine applied, the PUC waived the privilege by exchanging the requested emails with First Energy. In its response brief, the PUC countered that it shared a

---

[2] Act of November 30, 2004, P.L. 1672, 73 P.S. §§1648.1–1648.8.

2

common legal interest with First Energy, and noted that the common interest doctrine serves as an exception to the waiver of the attorney-work-product doctrine.

On March 27, 2017, the OOR issued its final determination, which granted the Requester's appeal and directed the PUC to provide all responsive records to the Requester within 30 days. (Petitioner's brief, at Appendix A.) In the final determination, the OOR determined that (1) the Requester had standing to appeal the PUC's denial of the request; (2) although the responsive emails constituted attorney-work-product, that privilege was waived; and (3) article V, section 10(c) of the Pennsylvania Constitution[3] does not protect the records from public disclosure in this instance. The PUC timely appealed the OOR's final determination to the Commonwealth Court.

On appeal,[4] the PUC raises four issues: (1) whether emails between PUC attorneys and counsel for First Energy, for the purpose of representing the PUC's shared interest in First Energy's legal position on jurisdiction under the AEPS Act and which were not disclosed to third parties, constitute attorney-work-product excluded from the RTKL's definition of a public record; (2) whether PUC attorneys waived the attorney-work-product privilege where the attorneys, representing the PUC's legal interest in pending litigation and as *amicus curiae* supporting a third party's legal position on jurisdiction against a common adversary, generated email communication containing the attorneys' factual and legal analysis with the third party's counsel; (3) whether the order issued by the OOR infringes upon the Pennsylvania Supreme Court's exclusive authority to regulate the practice of law by narrowing the application of the

_____

[3] PA. CONST. art. V, §10(c).

[4] "This Court's standard of review of a final determination of the OOR is *de novo* and our scope of review is plenary." *Hunsicker v. Pennsylvania State Police*, 93 A.3d 911, 913 n.7 (Pa. Cmwlth. 2014).

3

attorney-work-product doctrine for state agency attorneys and otherwise compelling the disclosure of information subject to the Supreme Court's rules of confidentiality; and (4) whether Sunrise lacks standing as a "requester" to appeal under the RTKL, where the original RTKL request named David N. Hommrich as the requester and was not filed in Hommrich's official capacity as an officer of Sunrise.

## Discussion

Initially, we note that the objective of the RTKL "is to empower citizens by affording them access to information concerning the activities of their government." *SWB Yankees LLC v. Wintermantel*, 45 A.3d 1029, 1042 (Pa. 2012). Pursuant to section 305 of the RTKL, a record in the possession of a Commonwealth agency, such as the PUC in this case, shall be presumed to be a public record unless the record is (1) exempt under section 708 of the RTKL; (2) protected by a privilege; or (3) exempt from disclosure under any other federal or state law or regulation or judicial order. 65 P.S. §67.305.

## Whether the Emails Constitute Attorney-Work-Product

Section 102 of the RTKL defines "public record," in pertinent part, as "[a] record including a financial record of a Commonwealth or local agency that . . . is not protected by a privilege." 65 P.S. §67.102. In turn, a "privilege" is defined as "the attorney-work product doctrine, the attorney-client privilege, the doctor-patient privilege, the speech and debate privilege or other privilege recognized by a court interpreting the laws of this Commonwealth." *Id.* The agency bears the burden to prove, by a preponderance of the evidence, that a record contains privileged material and, hence, is protected from disclosure. 65 P.S. §67.708(a)(1); *Office of the District*

4

*Attorney of Philadelphia v. Bagwell (Bagwell IV)*, 155 A.3d 1119 (Pa. Cmwlth. 2017). Further, "[r]elevant and credible testimonial affidavits may provide sufficient evidence in support of a claimed exemption; however, conclusory affidavits, standing alone, will not satisfy the burden of proof an agency must sustain to show that a requester may be denied access to records under the RTKL." *Bagwell IV*, 155 A.3d at 1120 (citing *McGowan v. Pennsylvania Department of Environmental Protection*, 103 A.3d 374, 381 (Pa. Cmwlth. 2014); *Heavens v. Pennsylvania Department of Environmental Protection*, 65 A.3d 1069, 1074 (Pa. Cmwlth. 2013)).

The "work-product privilege only applies to records that are the work-product of an attorney, and may extend to the product of an attorney's representative secured in anticipation of litigation." *Bagwell v. Pennsylvania Department of Education (Bagwell I)*, 103 A.3d 409, 415 (Pa. Cmwlth. 2014) (citing *Rittenhouse v. Board of Supervisors*, (Pa. Cmwlth., No. 1630 C.D. 2011, filed April 5, 2012)). Pursuant to the Pennsylvania Rules of Civil Procedure:

> [T]he work product doctrine provides that a party may obtain discovery of material prepared in anticipation of litigation or trial by a party's attorney, but discovery "shall not include disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories."

*Id.* (quoting Pa.R.C.P. No. 4003.3).

The attorney-work-product doctrine acknowledges that "attorneys need a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947). Thus, the attorney-work-product doctrine serves the purpose of safeguarding the mental processes of an attorney, as well as the materials prepared by agents of that attorney. *Bagwell I*, 103 A.3d at 416.

5

With respect to the RTKL, we have held that the attorney-work-product doctrine not only "protects the mental impressions, theories, notes, strategies, research and the like created by an attorney in the course of his or her professional duties, *particularly in anticipation or prevention of litigation* from disclosure," but also "any material prepared by the attorney in anticipation of litigation, regardless of whether it is confidential." *Id.* (internal citations and quotation marks omitted). Our Supreme Court has established that materials constituting attorney-work-product are not subject to compulsory disclosure under the RTKL. *See LaValle v. Office of General Counsel*, 769 A.2d 449, 459 (Pa. 2001) (decided under Pennsylvania's former RTKL).

In support of its argument that the identified emails constitute attorney-work-product, the PUC produced three affidavits. The PUC's Open Records Officer, Rosemary Chiavetta, Esq., avers in her affidavit that the subject emails were drafted and sent by and between counsel for the PUC and counsel for First Energy, and that they related to ongoing litigation between First Energy and Sunrise. She further asserted that all communication sent by PUC's counsel was related to the PUC's legal interest in that ongoing litigation, as well as potential litigation against the PUC. The affidavit of the PUC's Deputy Chief Counsel, Robert Young, Esq., reflects the same.

On the other hand, Sunrise submits that the identified emails do not constitute attorney-work-product, primarily because the PUC was not a party to the ongoing litigation between First Energy and Sunrise. Sunrise also argues that First Energy, which is not a party to the instant matter, generated a number of the relevant emails, and that, with respect to those emails, the PUC cannot assert the attorney-work-product privilege. Sunrise also asserts that the affidavits submitted by the PUC contained bald assertions, and were insufficient to demonstrate that the documents were protected by the attorney-work-product doctrine.

The OOR found that the attorney-work-product doctrine was applicable to the emails in this case. In doing so, it cited language from the PUC's affidavits, and ultimately concluded that the PUC "established that some of the responsive e-mails contain the legal and factual analysis of its attorneys." (Petitioner's brief, at Appendix A.) However, the OOR did not specifically address Sunrise's argument that the affidavits were too "conclusory and vague" to demonstrate, by themselves, that the emails were protected by the attorney-work-product doctrine.

We considered the sufficiency of affidavits to establish the attorney-work-product privilege in *Pennsylvania Department of Education v. Bagwell (Bagwell III)*, 131 A.3d 638 (Pa. Cwmlth. 2016). In *Bagwell III*, the Pennsylvania Department of Education appealed the final determination of the OOR which directed the disclosure of certain emails pursuant to the RTKL. In support of its argument, the Department of Education presented affidavits regarding the content of the requested documents, arguing that disclosure of those documents was precluded by the attorney-work-product doctrine; however, it did not submit a privilege log to either the OOR or the Court. We found that "[a]s a result, neither [the] OOR nor this Court had sufficient information to evaluate the exemptions." *Id.* at 658 (citing *Office of the Governor v. Davis*, 122 A.3d 1185 (Pa. Cmwlth. 2015) (*en banc*)). We found the affidavits of the Department of Education to be "conclusory and vague" because they did not "describe the records with any particularity as to how the privilege supports non-disclosure or redaction . . . of allegedly responsive records." *Id.*

In the case before us, the PUC identified numerous emails that were responsive to Sunrise's request. Relying on the PUC's affidavits, the OOR merely determined that "some" of the identified emails constituted attorney-work-product. This determination was made without reviewing the content of each email and, more

7

importantly, without consideration of the fact that certain emails were drafted and sent by counsel for First Energy. With respect to those emails, the attorney-work-product privilege is First Energy's to assert and cannot be asserted by the PUC on behalf of First Energy.

In *Bagwell III*, we looked to federal case law to explain that standing to challenge the disclosure of privileged records generally "inures to the person or entity holding the privilege to preserve it." 131 A.3d at 648 (citing *In re Grand Jury*, 705 F.3d 133 (3d Cir. 2012)). We held that "attorney privileges constitute a sufficient interest to allow a privilege holder standing to appeal an order directing disclosure of allegedly privileged material." *Bagwell III*, 131 A.3d at 648.

Next, we acknowledged the "traditional" test for standing, which "requires a party seeking to challenge an agency action to show a 'direct and substantial interest [and] a sufficiently close causal connection between the challenged action and the asserted injury' so the interest qualifies as immediate." *Id.* at 649 (quoting *DeFazio v. Civil Service Commission of Allegheny County*, 756 A.2d 1103, 1105 (Pa. 2000)). We ultimately concluded that the privilege holder, which was not a party to the action before us, was able to show a sufficient nexus to the disclosure dispute to give it standing to challenge the final determination of the OOR. This was because the privilege holder would be aggrieved by the disclosure of documents implicating its attorney-client and attorney-work-product privileges.

The same is true here. First, it is undisputed that First Energy was not notified of this disclosure dispute and, therefore, has not participated in the proceedings to date. It is also undisputed that at least some of the emails identified by the PUC in response to Sunrise's request constitute the work product of First Energy. Thus, First

8

Energy may be aggrieved if some of its work product is disclosed to Sunrise without its consent.

In fact, section 1101(c) of the RTKL requires that an interested party, such as First Energy, be notified of the appeal of a final determination of the OOR:

> (1) A person other than the agency or requester with a direct interest in the record subject to an appeal under this section may, within 15 days following receipt of actual knowledge of the appeal but no later than the date the appeals officer issues an order, file a written request to provide information or to appear before the appeals officer or to file information in support of the requester's or agency's position.
>
> (2) The appeals officer may grant a request under paragraph (1) if:
>
>> (i) no hearing has been held;
>> (ii) the appeals officer has not yet issued its order; and
>> (iii) the appeals officer believes the information will be probative.
>
> (3) Copies of the written request shall be sent to the agency and the requester.

65 P.S. §1101(c)(1)-(3).

Based upon the fact that the OOR did not review the content of the identified emails to determine which entity held the attorney-work-product privilege with respect to each email, and because First Energy did not have the opportunity to protect its interests in its own attorney-work-product, we will remand this matter to the OOR to review the actual content of the responsive emails held by the PUC. To facilitate this process on remand, the PUC shall (1) notify First Energy of its ability to participate, pursuant to section 67.1101(c) of the RTKL; and (2) submit a privilege log to the OOR for *in camera* review.

## Waiver of the Attorney-Work-Product Privilege

The attorney-work-product doctrine is not absolute; rather it is a qualified privilege that can be waived. *Bagwell I*, 103 A.2d at 417 (citing *Commonwealth v. Kennedy*, 876 A.2d 939, 945 (Pa. 2014)). Once disclosed to a third party, the privilege is deemed waived. "[W]hen waiver is the focus of a dispute, the burden is shifted to the party asserting the waiver." *Bagwell I*, 103 A.2d at 418. Whether the attorney-work-product privilege has been waived is determined based upon the particular circumstances of each case. *Id.* (citing *United States v. Nobles*, 422 U.S. 225, 238-40 (1975)).

> We further explained the burden of proving waiver:
>
> [T]he RTKL requires a requester to address an agency's grounds for denial [of production], thus imposing some burden on a requester. 65 P.S. § 67.1101(a); *Dep't of Corr. v. Office of Open Records*, [18 A.3d 429 (Pa. Cmwlth. 2011)]. Also, the presumption of public nature does not apply in cases of privileged records. *See* 65 P.S. § 67.305(a)(2). Thus, if a privilege is established, a record is exempt as to the privileged information. An agency lacks the discretion to provide access to a privileged record. See Section 506(c) of the RTKL, 65 P.S. §67.506(c).

*Bagwell I*, 103 A.2d at 420-21.

A few Pennsylvania courts have applied the common interest doctrine, or joint defense privilege, as an exception to waiver; however, these cases address the common interest doctrine with respect to the attorney-client privilege:

> As a policy matter, the joint defense doctrine is highly desirable because it allows for greater efficiency in the handling of litigation. Frequently, co-defendants with essentially the same interests must retain separate counsel to avoid potential conflicts over contingent or subsidiary issues in the case. To avoid duplication of efforts, such defendants

should be able to pool their resources on matters of common interest. This can be done most effectively if both counsel can attend and participate in interviews with each other's clients. . . . With multi-party cases becoming so frequent, and with litigation costs spiraling upwards-some would say out of control, the courts should not deny defendants the ability to pool their resources and coordinate their efforts on issues of common interest.

Although many issues concerning the joint defense or common interest privilege have yet to be addressed by our courts, various decisions have emphasized that a shared common business interest or an interest that is solely commercial is insufficient to warrant application of the privilege.

*In re Condemnation by City of Philadelphia in 16.2626 Acre Area*, 981 A.2d 391, 397-98 (Pa. Cmwlth. 2009). To demonstrate that the common interest doctrine applies, four elements must be shown:

(1) the parties' agreement to same; (2) a common-interest in the litigation or a jointly shared litigation strategy; (3) the communications were made pursuant to such agreement, and (4) the continued confidentiality of the communications, i.e., the communications were not disclosed to other third parties such that the privileges were waived.

*Rosser Int'l, Inc. v. Walter P. Moore & Assocs., Inc.*, No. 2:11-CV-1028, 2013 WL 3989437, at *19 (W.D. Pa. Aug. 2, 2013).

The PUC argues that it did not waive the attorney-work-product privilege by sharing the emails with First Energy because (1) it participated in the prior litigation as *amicus curiae* in support of First Energy; and (2) it shared a common legal interest with First Energy, thus excepting it from waiver. The PUC noted that the emails were sent to and from counsel, and that the PUC shared the same legal interest as First Energy because both entities faced challenges under the AEPS Act.

11

Sunrise counters that, even if the emails were found to constitute attorney-work-product product, the privilege was waived because the PUC shared the records with First Energy, which is not a party to the current litigation. Sunrise also reiterates that, because First Energy generated at least some of the emails, the PUC could not assert the attorney-work-product privilege with respect to those emails. Finally, Sunrise contends that the PUC did not satisfy the requirements of the common interest doctrine.

Because we are remanding this matter to the OOR to determine whether any of the subject emails are protected from disclosure based upon the attorney-work-product doctrine, it is not necessary for us to determine whether such privilege has been waived or whether the common interest doctrine applies in this case. Such a determination only becomes relevant if the emails held by the PUC are, in fact, attorney-work-product.

**Article V, Section 10(c) of the Pennsylvania Constitution**

The PUC next argues that the order issued by the OOR infringes upon the Pennsylvania Supreme Court's exclusive authority to regulate the practice of law by narrowing the application of the attorney-work-product doctrine for state agency attorneys and otherwise compelling the disclosure of information subject to the Supreme Court's rules of confidentiality. Article V, section 10(c) of the Pennsylvania Constitution[5] has been interpreted as vesting in the Supreme Court the exclusive power to govern the conduct of attorneys practicing law in this Commonwealth.

In support of its argument, the PUC cites our prior decision in *City of Pittsburgh v. Silver*, 50 A.3d 296, 300-01 (Pa. Cmwlth. 2012), wherein we held that

---

[5] PA. CONST. art. V, §10(c).

12

correspondence related to the negotiation of a settlement of pending litigation was not subject to public access under the RTKL because the disclosure of such documents would violate Rule 1.6 of the Pennsylvania Rules of Professional Conduct.

In turn, pursuant to its constitutional power under article V, section 10(c), our Supreme Court promulgated Rule 1.6(a) of the Pennsylvania Rules of Professional Conduct which provides, in pertinent part, that "[a] lawyer shall not reveal information relating to representation of a client unless the client gives informed consent, except for disclosures that are impliedly authorized in order to carry out the representation." Pa.R.P.C. 1.6(a). In addition, comment 3 to Rule 1.6(a) provides:

> The principle of client-lawyer confidentiality is given effect by related bodies of law: the attorney-client privilege, the work product doctrine and the rule of confidentiality established in professional ethics. The attorney-client privilege and work-product doctrine apply in judicial and other proceedings in which a lawyer may be called as a witness or otherwise required to produce evidence concerning a client. The rule of client-lawyer confidentiality applies in situations other than those where evidence is sought from the lawyer through compulsion of law. The confidentiality rule, for example, applies not only to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source. A lawyer may not disclose such information except as authorized or required by the Rules of Professional Conduct or other law.

Pa.R.P.C. 1.6 cmt. (3).

However, the PUC misinterprets the *Silver* holding. In *Office of Open Records v. Center Township*, 95 A.3d 354 (Pa. Cmwlth. 2014), we noted that "*Silver's* holding cannot reasonably be extended to deprive the OOR of subject matter

jurisdiction to determine, as a threshold matter, whether documents are privileged and exempt from disclosure under the RTKL." 95 A.3d at 360. We explained:

> At its core, then, the issue in *Silver* concerned a clash between the RTKL, which permits disclosure of information protected by the ethics-based rule of confidentiality, and Pa.R.P.C. 1.6, which prohibits such disclosure. It is against this backdrop, and the fact that disclosure of the settlement negotiations violated the ethics-based rule of confidentiality, that this Court concluded, *sua sponte*, that our Supreme Court's authority under Article V, Section 10(c) trumped the RTKL's requirement that the documents should be disclosed and that the OOR lacked subject matter jurisdiction to order disclosure.

*Center Twp.*, 95 A.3d at 361. We expressly noted that *Silver* "stands for the limited proposition that the RTKL cannot mandate and the OOR cannot order the disclosure of settlement documents when that disclosure would contravene the ethics-based rule of confidentiality in Pa.R.P.C. 1.6." *Id.* Thus, we concluded that "there is no jurisdictional or constitutional impediment that would prohibit the OOR from analyzing documents and determining whether they fulfill the requirements necessary to be considered privileged documents for purposes of the RTKL." *Id.* at 365.

Therefore, PUC's argument that the OOR's final determination infringes upon the Pennsylvania Supreme Court's exclusive authority to regulate the practice of law necessarily fails.

**Standing of the Requester to Appeal**

Finally, the PUC argues that the Requester did not have standing to appeal the PUC's denial of disclosure to the OOR. Specifically, the PUC contends that Hommrich's request for production under the RTKL was made in his individual

14

capacity—not in his capacity as an officer on behalf of Sunrise—and that, as such, Hommrich cannot bind Sunrise.

Section 1101(a)(1) of the RTKL provides that "a requester may file an appeal with the [OOR]" if a request for access to records is denied. 65 P.S. §67.1101(a)(1). A "requester" is defined in section 102 of the RTKL as "[a] person that is a legal resident of the United States and requests a record" pursuant to the RTKL. 65 P.S. §67.102.

While it is true that Hommrich failed to expressly indicate that his requests were being made on behalf of Sunrise, he made that clarification on appeal. As explained by the OOR, the PUC did not produce any evidence to indicate that Hommrich is not, in fact, an officer or employee of Sunrise. Thus, we find that Hommrich's initial error was not fatal to his standing to appeal, and that he satisfies the definition of a "requester" under the RTKL.

**Conclusion**

Based on the foregoing, we find that this disclosure dispute must be remanded to the OOR to determine, on an individual basis, whether the emails identified by the PUC constitute attorney-work-product of either the PUC or First Energy. To do so, the PUC is directed to, first, notify First Energy of the disclosure dispute and invite First Energy to participate, and, second, submit a privilege log to the OOR. We also find that Hommrich had standing to bring this appeal on behalf of Sunrise, and that the PUC's argument with respect to article V, section 10(c) of the Pennsylvania Constitution must fail.

Therefore, we vacate the OOR's final determination and remand the matter to the OOR to complete the record.


_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Public Utility     :
Commission,     :
         Petitioner     :
             :    No.  503 C.D. 2017
         v.     :
             :
Sunrise Energy, LLC,     :
         Respondent     :

## *ORDER*

AND NOW, this 12th day of January, 2018, the final determination of the Office of Open Records (OOR) is vacated.  The matter is remanded to the OOR for further proceedings consistent with this opinion.

Jurisdiction relinquished.

_____
PATRICIA A. McCULLOUGH, Judge