**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, JJ.**

| | | |
|---|---|---|
| PENNSYLVANIA STATE POLICE, | : | No. 44 MAP 2022 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 1066 |
| | : | CD 2017 dated November 17, 2021 |
| v. | : | Vacating the Determination of the |
| | : | Office of Open Records at No. AP |
| | : | 2017-0593 dated July 7, 2017 and |
| AMERICAN CIVIL LIBERTIES UNION OF PENNSYLVANIA, | : | Remanding. |
| | : | |
| | : | ARGUED: March 7, 2023 |
| Appellant | : | |

## OPINION

**JUSTICE WECHT**                                          **DECIDED: August 22, 2023**

This appeal arises under the Right-to-Know Law ("RTKL").[1] We consider whether the Commonwealth Court abused its discretion when—*sua sponte*—it issued a remand to the Office of Open Records ("OOR") for additional fact-finding after that court already had determined that the agency subject to the record request failed to meet its burden of proving that an exception to disclosure requirements applied. We conclude that such an abuse of discretion occurred, and we accordingly reverse. We remand this matter to the Commonwealth Court for disposition consistent with this Opinion.

The General Assembly enacted the RTKL in 2008 in an effort to promote transparency. The RTKL provides that any "record in the possession of a Commonwealth agency or local agency shall be presumed to be a public record" unless it is protected by a privilege, exempt from disclosure under "any other Federal or State law or regulation or

---

[1]     Act of Feb. 14, 2008, P.L. 6, No. 3, 65 P.S. §§ 67.101- 67.3104.

judicial order or decree," or exempt under Section 708 of the RTKL.[2] The burden of proving that one of the Section 708 exceptions applies belongs to the Commonwealth agency that is resisting disclosure.[3]

In March 2017, the American Civil Liberties Union of Pennsylvania ("ACLU") submitted a RTKL request to the Pennsylvania State Police ("PSP") seeking a copy of AR 6-9, a nine-page regulation that explains how that agency monitors social media. PSP produced the policy, but heavily or completely redacted every page. PSP asserted that these redactions were appropriate pursuant to the public safety exception of Section 708, which exempts from disclosure records:

> maintained by an agency in connection with the military, homeland security, national defense, law enforcement or other public safety activity that, if disclosed, would be reasonably likely to jeopardize or threaten public safety or preparedness or public protection activity or a record that is designated classified by an appropriate Federal or State military authority.[4]

PSP submitted the affidavit of Major Douglas J. Burig, the Director of PSP's Bureau of Criminal Investigations, in support of its position. Major Burig attested that disclosing AR 6-9 would jeopardize the effectiveness of PSP investigations.

ACLU filed an administrative appeal with OOR, requesting an *in camera* review of the unredacted policy so that OOR could determine whether the public safety exception applied. OOR examined AR 6-9 section by section and explained why, as to each, the Burig Affidavit's claims about the likely effects of disclosure were not supported by the substance of the unredacted text. OOR determined that "[t]he processes described . . . are strictly internal and administrative in nature, providing third parties with no opportunity to intercept or alter any Trooper's request or clearance to conduct any investigation."[5] In

---

[2]     65 P.S. §§ 67.305(a), 67.708.

[3]     *Id.* § 67.708(a)(1).

[4]     *Id.* § 67.708(b)(2).

[5]     OOR Final Determination, 7/17/2017, at 5-6 (hereinafter, "O.F.D.").

short, "the threats outlined in [the Burig Affidavit] simply do not match the text of the policy."[6]  Accordingly, OOR directed PSP to furnish ACLU an unredacted copy.

PSP appealed, and a three-judge panel of the Commonwealth Court reversed.[7] The court opined that, while establishing the likelihood of a threat required more than speculation, the agency was not required to establish a definite threat.[8]  Contrary to OOR's conclusion, the panel determined, the Burig Affidavit was sufficient to sustain PSP's burden because Major Burig's conclusions were grounded in his extensive experience.  *In camera* review was not necessary, the court explained, where "*the effect of the disclosure*" was at issue, as opposed to "the actual *words on the page*."[9]

We granted ACLU's petition for *allocatur*, and we vacated the Commonwealth Court's order.  We held that the ruling below "eliminate[d] one of the key structural features of the current RTKL process and create[d] a *de facto* presumption of non-disclosure in virtually all cases" where the effect of disclosure is at issue.[10]  The Commonwealth Court had "accepted the contents of a wholly untested affidavit," which was "necessarily vague," and did not "[avail] itself of the readily available opportunity to measure the [Burig Affidavit] against [AR 6-9]."[11]  In granting PSP undue and sweeping

---

6        *Id.* at 9.

7        *Pa. State Police v. ACLU of Pa.*, 1066 C.D. 2017, 2018 WL 2272597 (Pa. Cmwlth. May 18, 2018) ("*PSP I*").

8        *See id.* at *2 (discussing *Carey v. Pa. Dep't of Corr.*, 61 A.3d 367, 375 (Pa. Cmwlth. 2013); *Harrisburg Area Cmty. Coll. v. OOR*, 2110 C.D. 2009, 2011 WL 10858088 (Pa. Cmwlth. May 17, 2011)).

9        *Id.* at *6 (emphases added).  The court noted that situations in which it had reviewed unredacted documents *in camera* "usually . . . involved exemptions claimed under the attorney-client privilege or the predecisional deliberative process."  *Id.* (citing *Twp. of Worcester v. OOR*, 129 A.3d 44, 60 (Pa. Cmwlth. 2016)).

10       *ACLU of Pa. v. Pa. State Police*, 232 A.3d 654, 669 (Pa. 2020) ("*PSP II*").

11       *Id.* at 670.

deference, we concluded, the Commonwealth Court had erected a barrier to disclosure that was "irreconcilable with the RTKL." We held that the court had abused its discretion by declining to conduct *in camera* review "simply because there [was] no facial evidence of bad faith."[12] This Court vacated the Commonwealth Court's order and remanded the case for further proceedings.

Following remand, the Commonwealth Court proceeded to conduct an *in camera* review of the unredacted version of AR 6-9.[13] The court determined that the text of each section

> and the description and statements in the affidavit concerning the risks arising from disclosure [were] insufficient to allow [it] to determine whether disclosure . . . could reasonably be expected to aid criminals in evading detection of illegal activities or [with respect to some sections,] to aid unacceptable candidates in hiding unfavorable background information.[14]

The Commonwealth Court repeatedly found that it could not "determine from the current record whether disclosure of this section would be reasonably likely to threaten public safety or preparedness."[15] The court recognized that, in general, "it is the burden of the party resisting disclosure to establish that an exemption from the RTKL applies."[16] It opined, however, that, "where the subject matter of a request involves public safety or security, such as in police matters, careful consideration of a complete record is especially important, and supplementation of the record, if necessary, is appropriate."[17]

---

[12]     *Id.*

[13]     *Pa. State Police v. ACLU of Pa.*, 1066 C.D. 2017, 2021 WL 5356532, at *2 (Pa. Cmwlth. Nov. 17, 2021) ("*PSP III*").

[14]     *Id.* at *2-*4.

[15]     *Id.*

[16]     *Id.* at *4 (citing *Pa. State Police v. Muller*, 124 A.3d 761, 766 (Pa. Cmwlth. 2015)).

[17]     *Id.*

In spite of its finding that Major Burig's Affidavit was "insufficient to connect the text of AR 6-9 with the risks he articulates," the court concluded nonetheless that "PSP should be given a further opportunity to explain the nature and degree of the risks it claims are inherent in potential disclosure of the contents of AR 6-9."[18] It then vacated OOR's Final Determination and remanded the matter to OOR for "further supplementation of the record, including an evidentiary hearing, and issuance of a new determination."[19] ACLU again petitioned this Court for *allocatur*, which we granted.

ACLU first argues that the Commonwealth Court abused its discretion in refusing to order the release of AR 6-9, given that court's conclusion that the Burig Affidavit did not support PSP's heavy redactions. A "straightforward reading of the text of the RTKL and a dispassionate application of this Court's precedents," ACLU asserts, leaves "nothing left for the Commonwealth Court to do except affirm the OOR's order."[20] According to ACLU, the intermediate panel's decision to remand lacked a basis in the text of the RTKL or any justification on the record, and also conflicted with the statute's core purposes.

ACLU stresses that the General Assembly intended to require proof of "a *probable* threat to public safety, not a *possible* or *colorable* one," and ACLU maintains that the Commonwealth Court undermined that requirement by exempting PSP from the applicable burden of proof in light of its security concerns.[21] ACLU argues that, while the General Assembly could have carved out a special status for law enforcement agencies, it did not. As a result of "permitting [PSP] to obtain a do-over of its effort[s] to carry its burden of proof," ACLU contends, the decision below "undercuts expediency by

---

[18]     *Id.* at *5.

[19]     *Id.*

[20]     ACLU Br. at 14.

[21]     *Id.* at 15-16 (emphases in original).

dramatically enlarging the time (and cost) required to secure a record's release in public safety cases."[22]  ACLU reminds this Court that this appeal began over six years ago, and ACLU objects to the prospect that, in returning to OOR for further fact-finding, it would be sent back all the way to "Square One."[23]  ACLU further cautions that affording PSP a two-bites-at-the-apple rule would encourage agencies like PSP to rely upon affidavits that are as vague as possible—knowing that they would get another opportunity to buttress their arguments—and to intentionally protract litigation so that requesters are forced to abandon their pursuits.

ACLU relies upon *Department of Public Welfare v. Eiseman*, in which this Court refused to allow a Commonwealth agency—which had agreed that the only remaining question was whether an exception applied—to introduce new evidence in support of a new defense to disclosure.[24]  We held that allowing the Department of Public Welfare to "advance shifting positions" would frustrate the RTKL's goals of timely disclosure.[25] ACLU argues that the same is true here.  Moreover, ACLU contends that *Carey v. Pennsylvania Department of Corrections*—a case upon which PSP relies—does not compel a different conclusion.[26]  There, the Commonwealth Court permitted supplementation of the record based upon the Department of Corrections' failure to identify which records were responsive to the request and its failure to address whether redactions were appropriate.[27]  To the extent that *Carey* stands for the proposition that

---

[22]     *Id.* at 17 (discussing *Bowling v. OOR*, 75 A.3d 453, 473 (Pa. 2013) ("*Bowling II*") (noting the General Assembly's "goal . . . of ensuring swift determinations")).

[23]     *Id.* at 18.

[24]     125 A.3d 19, 29 (Pa. 2015)

[25]     *Id.*

[26]     *See* ACLU Br. at 21-22.

[27]     61 A.3d at 377.

an agency is allowed "to reboot the entire fact-development process with the benefit of both perfect hindsight and a judicial explication" of the flaws in its initial attempt to defeat disclosure, ACLU claims that it is irreconcilable with the structure and goals of the RTKL and should be disapproved.[28] Today's case, ACLU argues, is more akin to *McKelvey v. Pennsylvania Department of Health*, where this Court rejected a request to supplement the record because the agency in question had "received numerous opportunities to submit evidence and argument before the OOR, and chose not to take advantage of those opportunities."[29]

Finally, ACLU insists that the decision below constituted an abuse of discretion because courts may only adopt the mantle of advocate and *sua sponte* fashion relief in the rarest of circumstances, such as when there is a question of subject matter jurisdiction.[30] Here, PSP had consistently maintained that the Burig Affidavit by itself was sufficient to justify invocation of the public safety exception, and it had resisted the consideration of any other facts.[31] Because concerns about jurisdiction did not animate the Commonwealth Court's disposition, because PSP never requested a remand, and because supplementation was antithetical to the position that PSP maintained throughout this litigation, ACLU requests that we deem the Commonwealth Court's remand to be an abuse of discretion. Although it acknowledges this Court's statement in *PSP II* that, "[i]n keeping with its authority under the RTKL, the [Commonwealth Court] . . . retains discretion to further develop the record," ACLU argues that any such development

---

[28] *See* ACLU Br. at 21-22.

[29] 255 A.3d 385, 404 (Pa. 2021).

[30] *In re Adoption of K.M.G.*, 219 A.3d 662, 668 (Pa. Super. 2019) ("It is well established that an appellate court may not raise an issue *sua sponte*, except when the issue addresses the subject-matter jurisdiction of the court.").

[31] *See* ACLU Br. at 22-23 (citing PSP briefs throughout this litigation).

nevertheless must be consistent with the structure of the RTKL.[32] Here, where the court reviewed the unredacted version of AR 6-9 *in camera* and concluded that PSP's justification was insufficient, the only appropriate action was to order that the record be disclosed.

PSP counters that the Commonwealth Court acted within its discretion as the ultimate finder of fact when it remanded the case to OOR to expand the record. Moreover, PSP asserts, that action was consistent with this Court's instruction in *PSP II*.[33] Contrary to ACLU's assertion, PSP argues that *Carey* controls and that supplementation of the record is appropriate. There, the Commonwealth Court recognized inherent risks associated with the disclosure of information in the prison setting,[34] and PSP contends that the same is true in the context of law enforcement. According to PSP, ACLU's position would represent "an impermissible restriction on the discretion of [fact-finding courts] to seek additional evidence when circumstances" require it.[35] PSP asserts that such a position would "remov[e] most, if not all, discretion from the court" to balance competing interests and would require critical public safety information to be disclosed "simply because an affidavit drafter hews slightly away from the needed specificity, despite operating in good faith and raising legitimate concerns."[36] PSP dismisses ACLU's concerns about agencies intentionally drafting affidavits that lack detail as "simple fearmongering."[37]

---

[32]    232 A.3d at 671; ACLU Br. at 25.

[33]    PSP Br. at 11-12.

[34]    *See Carey*, 61 A.3d at 377.

[35]    PSP Br. at 15-16.

[36]    *Id.* at 17.

[37]    *Id.*

Regarding the *sua sponte* nature of the order, PSP argues that analogous restrictions on that power "are of little value in interpreting a law without parallel."[38] Finally, because it always maintained that the Burig Affidavit is sufficient, PSP contends that "only the court . . . was in a position to elicit further development of the record."[39] Accordingly, PSP argues that it should be allowed the opportunity to further substantiate its position on remand.

In reviewing the Commonwealth Court's *sua sponte* remand of this case for further factual development, we determine whether that court abused its discretion. Our scope of review is plenary.[40] We find that the panel below committed an abuse of discretion because its decision had no basis in the text and structure of the RTKL, nor in the record, and because it exceeded its limited power to act *sua sponte*.

Initially, we observe the Commonwealth Court's conclusion in *Bowling* that, "in the absence of a specific restriction, a court deciding a statutory appeal has the inherent authority to take reasonable measures to ensure that a record sufficient for judicial review exists."[41] In the context of the RTKL, the Commonwealth Court has exercised this authority to remand disclosure requests to OOR when there were outstanding questions of fact,[42] when an identified and relevant party did not have an opportunity to be heard

---

[38]     *Id.* at 18 (citing *PSP II*, 232 A.3d at 664 ("[T]he RTKL has no analog in other administrative or quasi-judicial frameworks . . . [.]")).

[39]     *Id.* at 19.

[40]     *Eiseman*, 125 A.3d at 29.

[41]     *Bowling v. OOR*, 990 A.2d 813, 822 (Pa. Cmwlth. 2010) ("*Bowling I*") (citing *Appeal of Borough of Churchill*, 575 A.2d 550 (Pa. 1990)).

[42]     *See, e.g., Pysher v. Clinton Twp. Volunteer Fire Co.*, 209 A.3d 1116, 1125 (Pa. Cmwlth. 2019) (remanding to determine whether a fire company qualified as a local agency under the RTKL); *Dep't of Labor and Indus. v. Earley*, 126 A.3d 355, 358 (Pa. Cmwlth. 2015) (remanding to determine whether requested email records, which had been deleted, might still exist on a server); *McGowan v. Pa. Dep't of Env. Prot.*, 103 A.3d (…continued)

below,[43] where an agency summarily denied a fee waiver,[44] and where the court identified evidence that should have been, but was not, considered.[45]   In other cases, it has remanded to correct a legal error,[46] to allow OOR to address a legal question in the first

---

374, 388 (Pa. Cmwlth. 2014) (remanding in part because "a genuine dispute exists as to whether [the documents in question] . . . contain purely factual material"); *Dep't of Labor and Indus. v. Rudberg*, 32 A.3d 877, 882 (Pa. Cmwlth. 2011) (remanding to determine whether performance review records in the agency's possession "relate[d] to its own employees or employees of other Commonwealth agencies").

[43]     *See, e.g.*, *Pa. Turnpike Comm'n v. Elec. Transaction Consultants Corp.*, 230 A.3d 548, 563 (Pa. Cmwlth. 2020) ("We remand the matter to the OOR to allow [one of the respondents] an opportunity to be meaningfully heard[.]"); *Pa. Pub. Util. Comm'n v. Sunrise Energy, LLC*, 177 A.3d 438, 444-45 (Pa. Cmwlth. 2018) (remanding in part because the recipient of agency documents subject to disclosure "did not have the opportunity to protect its interests in its own attorney-work-product"); *Wishnefsky v. Pa. Dep't of Corr.*, 144 A.3d 290, 295 (Pa. Cmwlth. 2016) (remanding because "Wishnefsky was not afforded an opportunity to be heard and to answer the [agency's] submission to OOR"); *Pa. Dep't of Educ. v. Bagwell*, 131 A.3d 638, 650 (Pa. Cmwlth. 2015) (remanding in light of the fact that "PSU did not have a meaningful opportunity to be heard before the initial fact-finder, OOR").

[44]     *See, e.g.*, *Prison Legal News v. OOR*, 992 A.2d 942, 949 (Pa. Cmwlth. 2010) ("[T]he matter is remanded to the OOR for further remand to the Department to provide explanations for why it denied [the] request for a public interest fee waiver[.]").

[45]     *See, e.g.*, *Glunk v. Dep't of State*, 102 A.3d 605, 609 (Pa. Cmwlth. 2014) ("Requester contended that the OOR failed to consider [a piece of evidence] . . . [and] this [c]ourt remanded to the OOR for consideration of [that evidence]").

[46]     *See, e.g.*, *West Chester Univ. of Pa. v. Rodriguez*, 216 A.3d 503, 510-11 (Pa. Cmwlth. 2019) (remanding where "the OOR applied incorrect standards with respect to . . . FERPA's education records definition" and instructing that "the instant case requires a balancing analysis to protect alleged constitutional privacy rights"); *State Employees' Ret. Sys. v. Campbell*, 155 A.3d 1153, 1156 (Pa. Cmwlth. 2017) (remanding and instructing OOR to perform a balancing test as required by *Pa. State Educ. Assoc. v. OOR*, 148 A.3d 142 (Pa. 2016)); *Barnett v. Pa. Dep't of Pub. Welfare*, 71 A.3d 399, 405 (Pa. Cmwlth. 2013) (remanding in light of the conclusion that OOR erred by summarily dismissing an appeal where the requester had satisfied the statutory requirements).

instance,[47] to allow an agency the opportunity to make limited redactions where it had not done so,[48] and to instruct OOR to conduct *in camera* review.[49] PSP argues that the remand in this case was consistent with that authority, as well as our statement in *PSP II* that the Commonwealth Court would retain its "discretion to further develop the record."[50] It is not.

In contrast to the foregoing examples, the Commonwealth Court in this instance identified no outstanding questions of law or fact, nor any parties that should be granted the opportunity to be heard. It discerned no legal error on the part of OOR. The proceedings before OOR included *in camera* review. PSP had already redacted AR 6-9. Neither party nor the court pointed to any particular evidence that was necessary to the court's analysis. Here, the Commonwealth Court answered the ultimate question[51] on a record that was "sufficient for judicial review"[52] and—without naming any defect or

---

[47]　　*See, e.g.*, *UnitedHealthcare of Pa., Inc. v. Baron*, 171 A.3d 943, 965 (Pa. Cmwlth. 2017) (remanding to OOR to address two legal questions); *Dep't of Labor and Indus. v. Heltzel*, 90 A.3d 823, 834 (Pa. Cmwlth. 2014) ("[W]e remand to allow OOR to evaluate the Section 708(b) exceptions in the first instance.").

[48]　　*See, e.g.*, *Pa. State Police v. Grove*, 119 A.3d 1102, 1111 (Pa. Cmwlth. 2015) (remanding to "permit PSP . . . to redact from [the] audio component [of the record] witness interviews and utterances of private citizens who had no notice of the recording"), *rev'd on other grounds*, 161 A.3d 877 (Pa. 2017); *Carey*, 61 A.3d at 377 (remanding where "DOC did not connect responsive records with a threat to public safety" or address whether it "may be able to redact responsive records and thus render them non-threatening to public safety").

[49]　　*See, e.g.*, *California Univ. of Pa. v. Schackner*, 168 A.3d 413, 423 (Pa. Cmwlth. 2017) ("[W]e remand this matter to the OOR to conduct *in camera* review of [the records] and to determine whether the records should be exempt from disclosure based on the attorney-client privilege.").

[50]　　*PSP II*, 232 A.3d at 671.

[51]　　*PSP III*, 2021 WL 5356532, at *5 (finding that the Burig Affidavit is "insufficient to connect the text of AR 6-9 with the risks he articulates").

[52]　　*Bowling I*, 990 A.2d at 822.

deficiency—simply gave PSP a fresh opportunity to carry its burden of proving that an exception to the disclosure rule applied. In the context of the RTKL, we conclude that the court abused its discretion.[53]

As this Court has recognized, "various provisions of the RTKL demonstrate an intent for an expedited determination of RTKL requests,"[54] and for disputes to be resolved "in an efficient and timely fashion."[55] The law's predecessors, the Right-to-Know Acts of 1957 and 2002, set forth no time limit within which an agency was bound to respond to a request for disclosure, and appellate review was limited to determining whether an agency's denial was supported by "just and proper cause."[56] Requesters bore the burden of demonstrating that a record was a "public record" and that they were entitled to see it.[57] The General Assembly passed the RTKL in 2008, overhauling that process. Agencies now bear the burden of proving an exception to the presumption that all records

---

[53] The Dissent contends that we "[fail] to address" the fact that "this Court told" the Commonwealth Court to do "exactly" what it did. *See* Dissenting Op. at 3.

We elucidate this Court's statement in *PSP II*—which, importantly, did not specifically instruct the Commonwealth Court to order additional fact-finding, but only recognized that it retained the discretion to do so—by contrasting the expansive view that the Dissent adopts with the way in which this discretion has been wielded in the foregoing examples. *Cf. PSP II*, 232 A.3d at 665 ("[E]ven where broad discretion is granted, it may be abused."). As discussed below, if PSP had requested the opportunity for additional fact-finding, our disposition today may have been different. *See infra* p.14. But PSP did not.

[54] *Levy v. Senate of Pa.*, 65 A.3d 361, 381 (Pa. 2013).

[55] *Bowling II*, 75 A.3d at 474. The Dissent reads *Bowling II* and *Levy* to stand for the proposition that the RTKL "is designed to provide expedient transparency of *non-exempt* records," Dissenting Op. at 5 (emphasis in original), but this Court has made no such distinction and we decline to make it here. The RTKL provides for the expedient determination of all requests, regardless of their outcome.

[56] *See id.* at 455 (discussing the progression from the RTKA to the RTKL).

[57] *Id.*

are public records.[58]  Read together, various sections of the RTKL provide that parties will see their requests "resolved or be before an appellate court within less than four months [of] the initial filing of the request" (absent an agreed-upon extension).[59]

The Commonwealth Court's unsubstantiated remand significantly undercuts the statute's aims.  First, its approach subjects requesters to the possibility of protracted litigation whenever a court expresses pause about the potential effects of fulfilling the RTKL's command.  ACLU rightly observes that "months or years of further proceedings" may yet be in store before it obtains the record at issue.[60]  This would be especially true if, even after remand, the Commonwealth Court again finds itself "unable to determine from the current record whether disclosure . . . would be reasonably likely to threaten public safety or preparedness."[61]  Six years already have passed.  If and when appellate review is allowed to serve as a reset button based upon a court's ill-defined policy concerns, there is no limiting principle, and the judiciary's claims to neutrality and ordered decision-making vanish.  The timely and efficient process that the General Assembly designed cannot give way to a system in which well-resourced agencies encounter no urgency to comply with the RTKL, while requesters deplete their coffers playing Sisyphus.

Second, the Commonwealth Court's remand partially relieved PSP of its statutorily-imposed burden to prove that an exception to the disclosure rule applies. Nothing in the statute contemplates judicial action after it has been determined that an agency did not carry its burden.  The Commonwealth Court's reasoning is eerily reminiscent of the "just and proper cause" inquiry that the General Assembly discarded when it enacted the RTKL.  An agency's attempt to prevent disclosure must succeed or

---

[58]     65 P.S. § 67.708(a)(1).

[59]     *Levy*, 65 A.3d at 381.

[60]     ACLU Br. at 18.

[61]     *PSP III*, 2021 WL 5356532, at *2-*4.

fail on its own merits.  If the Commonwealth Court could not "determine from the current record whether disclosure of this section would be reasonably likely to threaten public safety or preparedness,"[62] that simply means that PSP did not carry its burden.  To approve of the panel's intervention into that inquiry would be to give preferential treatment to one party over another.  This Court cannot countenance such a result.

Had PSP requested the opportunity to supplement the record, and had the Commonwealth Court granted that request, our disposition today might be different.  The record clearly demonstrates, though, that PSP steadfastly maintained its position that the Burig Affidavit alone was sufficient to justify its redactions of AR 6-9.[63]  Not once did PSP seek the opportunity to introduce additional facts, nor did it identify additional facts that would, if added to the record, support its decision.

Furthermore, it is axiomatic that "[s]ua sponte consideration of issues deprives counsel of the opportunity to brief and argue the issues and the court of the benefit of counsel's advocacy."[64]  In other words, it "disturbs the process of orderly judicial decision-making."[65]  This Court accordingly tolerates *sua sponte* action only in a narrow set of circumstances,[66] and these are not among them.  Our first remand to the Commonwealth Court was PSP's opportunity to supplement the record.  PSP did not take that opportunity,

---

[62]     *Id.*

[63]     *See supra* n.33.

[64]     *Wiegand v. Wiegand*, 337 A.2d 256, 257 (Pa. 1975).

[65]     *Johnson v. Lansdale Borough*, 146 A.3d 696, 709 (Pa. 2016).

[66]     *See, e.g.*, *Commonwealth v. Batts*, 163 A.3d 410, 434 (Pa. 2017) ("A challenge to the legality of a particular sentence may be reviewed . . . by an appellate court *sua sponte*."); *Commonwealth v. Edmondson*, 718 A.2d 751, 752 n.7 (Pa. 1998) ("[T]his Court can raise the issue of waiver *sua sponte* . . .[.]"); *LeFlar v. Gulf Creek Indus. Park No. 2*, 515 A.2d 875, 879 (Pa. 1986) ("The lack of jurisdiction of the subject matter may be raised at any time and may be raised by the court *sua sponte* if necessary.").

and the intermediate panel exceeded its authority in taking up the mantle of advocate and doing so on PSP's behalf.

Finally, *Carey*—which is non-binding on this Court in any event—is readily distinguishable. There, the Commonwealth Court found that the "circumstances present[ed] a uniquely suitable case for supplementation."[67] Evidence submitted by the agency in question "did not describe the responsive records or connect the security threat to them," and there was an open question as to whether redaction would serve the agency's interests.[68] Here, PSP submitted the Burig Affidavit describing the responsive records and attempting to connect the alleged security threat to them. AR 6-9 has already been redacted. Thus, because *Carey* offers little guidance with respect to the circumstances of this dispute, it need not be "disapproved."[69] Consistent with *McKelvey*[70] and *Eiseman*,[71] our decision today is grounded in faithful adherence to the structure of the RTKL, and in the knowledge that PSP had every opportunity to justify its resistance to disclosure.

The RTKL establishes that agencies bear the burden of proving that an exception to the disclosure rule applies. As the Commonwealth Court recognized, PSP has not carried that burden.[72] Nothing remains, then, but for the panel below to order that PSP

---

[67]     *Carey*, 61 A.3d at 377.

[68]     *Id.*

[69]     ACLU Br. at 21-22.

[70]     255 A.3d at 404 ("We note that the Department received numerous opportunities to submit evidence and argument before the OOR, and chose not to take advantage of those opportunities.").

[71]     125 A.3d at 29 ("[I]t contravenes th[e] salutary purpose [of the RTKL] for [an agency] to advance shifting positions in opposing disclosure").

[72]     *PSP III* at *5 (concluding that the Burig Affidavit is "insufficient to connect the text of AR 6-9 with the risks [it] articulates"). The Dissent argues that the Commonwealth Court's authority in this instance "derived from this Court's bestowal of broad fact-finding (…continued)

provide ACLU with an unredacted copy of AR 6-9.  We must, and we do, bring this six-year quest for transparency to an end.

The order of the Commonwealth Court is vacated and the case is remanded for proceedings consistent with this Opinion.

Chief Justice Todd and Justices Donohue and Dougherty join the opinion.

Justice Mundy files a dissenting opinion in which Justice Brobson joins.

---

discretion pursuant to the text and structure of the RTKL in *Bowling II*," and it submits that "the proper course of action would be to remand to the Commonwealth Court to make a final determination based upon the record as it currently exists." Dissenting Op. at 7.  The fact that the Commonwealth Court already has concluded that the Burig Affidavit is insufficient to justify PSP's redactions fatally undermines both points.  Whether a record is exempt from disclosure is indeed a factual question, *see id.* at 5 (quoting *Bowling II*, 75 A.3d at 476), but in light of the Commonwealth Court's opinion in *PSP III*, it is no longer an *outstanding* factual question.  Furthermore, the Dissent's proposed course of action is perplexing because the Commonwealth Court has already made its determination "based upon the record as it currently exists."  *Id.* at 7 n.7.

Relatedly, while the remand in *Bowling II* was not "at the behest of a party," *id.*, the critical distinction remains that no court in that case had explicitly determined that the agency's proffered justification for redaction was insufficient.